**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 3, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MICHAEL WILSON, SR.,

       Plaintiff - Appellee,

JESSE ORTIZ; OSCAR LEYVA; PATRICK MARQUEZ; MARK SANCHEZ; DUSTN SARRETT,

       Plaintiffs,

      v.

LAWRENCE MONTANO, Deputy; FRED TORRES, Deputy; JOE CHAVEZ, Warden; RENE RIVERA, former Sheriff;

       Defendants - Appellants,

JOHN DOE, VCDC booking officer or employee; MARTIN BENAVIDEZ, Officer; MIKE CHAVEZ, former Chief of Police; BRENT WOODARD; NICK BALIDO, former Los Lunas Police Department, Chief of Police; LOUIS BURKHARD, Sheriff; DELINDA CHAVEZ; JOSEPH CHAVEZ; ROY A. CORDOVA; GREG JONES, Bosque Farms Police Department, Police Chief; ROY MELNICK, Los Lunas Police Department, Chief of Police; DAN ROBB, Belen Police Department, Chief of Police; STEVEN ROBERTS; DEREK WILLIAMS; JOE STIDHAM, Former Bosque Farms Police Department, Police Chief,

       Defendants.

No. 12-2051

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. NO. 1:11-CV-00658-BB-KBM)**

Brandon Huss, Wallin, Huss & Mendez, LLC, Moriarty, New Mexico (Dennis K. Wallin, Wallin, Huss & Mendez, LLC, Moriarty, New Mexico, and Mary T. Torres, Beall & Biehler, Albuquerque, New Mexico, with him on the briefs), for Defendants-Appellants.

Matthew Coyte, Coyte Law P.C., Albuquerque, New Mexico, for Plaintiff-Appellee.

Before **MATHESON**, **EBEL**, and **MURPHY**, Circuit Judges.

**MURPHY**, Circuit Judge.

## I.     Introduction

Appellants seek reversal of the district court's order denying their motion to dismiss claims asserted against them by Michael Wilson, Sr. under 42 U.S.C. § 1983.  Wilson alleges he was unlawfully detained and deprived of his constitutional right to a prompt probable cause determination.  Appellants claim they are entitled to qualified immunity.  The district court concluded Wilson's complaint alleged sufficient facts to state a plausible claim against each of the appellants for violating his Fourth Amendment rights.  Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms** in part and **reverses** in part.

## II.   Background[1]

On December 18, 2010, Wilson was arrested without a warrant by Lawrence Montano, a deputy with the Valencia County Sheriff's Office ("VCSO") in New Mexico.  Montano asked Deputy Fred Torres to transport Wilson to the Valencia County Detention Center ("VCDC").  Prior to booking Wilson into the VCDC, Montano prepared a criminal complaint listing the charge against Wilson as a misdemeanor offense.  Neither Montano nor Torres ever filed the criminal complaint in a court with jurisdiction or brought Wilson before a judicial officer for a probable cause determination during the time he was held at the VCDC.  On December 29, 2010, eleven days after his arrest, Wilson was released from the VCDC by order of a magistrate judge.  In the order, the magistrate noted no complaint had been filed.  On January 4, 2010, after Wilson was released, Montano filed the misdemeanor criminal charge in an appropriate court.  On April 11, 2011, the district attorney's office dismissed the charge due to insufficient evidence.

Wilson brought suit under 42 U.S.C. § 1983.  His complaint named as defendants Deputies Montano and Torres; Joe Chavez, the warden of VCDC; and Rene Rivera, the Valencia County Sheriff during the time of Wilson's detention.

---

[1]The facts set forth here are drawn from the allegations in Wilson's complaint, which must be taken as true when considering a motion to dismiss. *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

-3-

Chavez and Rivera were named in both their individual and official capacities. Count I of the complaint alleged the defendants engaged in "Illegal and Unreasonable Detention in Violation of the Fourth Amendment." Counts III and IV alleged Warden Chavez and Sheriff Rivera, respectively, were liable for establishing an unconstitutional policy or custom and deliberate indifference.[2] Wilson alleged the deputies deliberately detained him without filing a criminal complaint or bringing him before a judicial officer for a probable cause determination. He further asserted that, prior to his detention, there were numerous incidents in which VCDC held individuals without filing criminal charges or otherwise allowing them to appear before a magistrate judge. Wilson thus alleged his detention was the result of a policy established by Warden Chavez in which individuals were routinely held without the filing of criminal charges until they were released by *sua sponte* court orders, and that Warden Chavez trained his staff to accept inmates without the filing of charges. Wilson also asserted Warden Chavez was deliberately indifferent to the unconstitutional policy of incarcerating citizens without pending charges.

Wilson made substantially similar claims against Sheriff Rivera. He alleged there were numerous prior incidents in which VCSO deputies arrested

---

[2]The complaint also alleged violations of the Fifth and Fourteenth Amendments and the New Mexico State Tort Claims Act and requested injunctive and declaratory relief. Those claims are not at issue in this appeal.

individuals without a warrant and thereafter failed to file criminal complaints or

provide prompt probable cause determinations. He asserted these illegal

detentions, including his own, were the result of a policy or custom established by

Sheriff Rivera. He also alleged Sheriff Rivera failed to train his staff, which

resulted in the routine incarceration of individuals without legal process. In

addition, Wilson alleged Sheriff Rivera was deliberately indifferent to the

constitutional violations which resulted from his policies, customs, and/or failure

to train his employees.[3]

Appellants jointly filed a motion to dismiss Wilson's claims, arguing, *inter
alia*, Wilson's complaint failed to state a claim against any of the defendants in

---

[3]In addition to Wilson's, two other suits were filed relating to the detention
of individuals at the VCDC. In *Ortiz v. Benavidez*, No. 11-cv-0951, Jesse Ortiz
alleged he was arrested without a warrant and detained at the VCDC for twelve
days without a probable cause hearing. The *Ortiz* complaint alleged Warden
Chavez established a policy or custom of holding citizens without pending
charges, trained his staff to accept detainees without the filing of charges or a
probable cause hearing, and was deliberately indifferent to the violations of
detainees' constitutional rights. In *Sarrett v. Cordova*, No. 11-cv-1021, four
plaintiffs made similar allegations of warrantless arrest and subsequent detention
at the VCDC without a probable cause hearing. The *Sarrett* complaint alleged
Warden Chavez and Sheriff Rivera implemented a policy or practice of holding
citizens without criminal complaints or probable cause determinations. Due to
common questions of law and fact, the district court consolidated *Ortiz* and
*Sarrett* with Wilson's case.

their individual capacities[4] and each of the defendants was entitled to qualified immunity. The district court denied the motion, and this appeal followed.[5]

## III. Discussion

### A. Jurisdiction and Standard of Review

Although an order denying a motion to dismiss based on qualified immunity is not a final judgment, this court has jurisdiction under 28 U.S.C. § 1291 to review the order "to the extent that it turns on an issue of law." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). This court reviews the district court's denial of a motion to dismiss based on qualified immunity de novo, accepting as true all well-pleaded factual allegations in the complaint and viewing the allegations in the light most favorable to the non-moving party. *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011). The Supreme Court recently articulated in detail the standard for evaluating a motion to dismiss based on qualified immunity:

---

[4]Appellants did not move to dismiss Wilson's claims against them in their official capacities.

[5]Wilson's complaint also includes as a defendant "John Doe VCDC Booking Officer or Employee." On appeal, the parties proceed as though the district court denied qualified immunity to Doe and Doe subsequently appealed. The district court, however, did not resolve any of the claims against Doe. Further, while appellants purport to raise arguments on Doe's behalf in their brief, neither counsel for Montano, Torres, and Chavez nor counsel for Rivera have claimed to represent Doe. Wilson's claims against Doe are therefore not properly before this court, and we express no opinion on their merits.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007)). In the context of a § 1983 action against multiple individual governmental actors, "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008).

Consistent with Supreme Court precedent, this court requires a plaintiff to "allege sufficient facts that show—when taken as true—the defendant plausibly violated his constitutional rights, which were clearly established at the time of violation." *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012). For a constitutional right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Even when the plaintiff pleads a violation of a clearly established right, the court must

sometimes consider "whether extraordinary circumstances—such as reliance on the advice of counsel or on a statute—so prevented the official from knowing that his or her actions were unconstitutional that he or she should not be imputed with knowledge of a clearly established right." *Shero v. City of Grove*, 510 F.3d 1196, 1204 (10th Cir. 2007). This court has discretion to decide which prong of the qualified immunity test to address first in light of the circumstances of each particular case. *Brown*, 662 F.3d at 1164.

B.      Duty to Ensure Prompt Probable Cause Determination

Appellants do not dispute that Wilson had a Fourth Amendment right to a prompt probable cause determination, and that such a right was clearly established at the time of Wilson's detention at the VCDC. *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991) (holding an arrestee is entitled to a probable cause determination within forty-eight hours absent "a bona fide emergency or other extraordinary circumstance"); *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975) ("[T]he Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest."). Appellants nonetheless argue they are entitled to qualified immunity because there is no clearly established law delineating which of them had the obligation to provide Wilson with a probable cause hearing. In support of this argument, appellants rely heavily on an unpublished case from this circuit, *Strepka v. Miller*, 28 F. App'x 823 (10th Cir. 2001). In *Strepka*, this court affirmed the dismissal of a

§ 1983 claim alleging officers violated the plaintiff's right to a prompt judicial determination of probable cause. *Id.* at 825–30. Analyzing the plaintiff's complaint against the officers in their individual capacities, we concluded: "Even under the most liberal construction, plaintiff's complaint was devoid of any allegations showing that any of the arresting officers caused or participated in the delay in providing plaintiff a prompt probable cause determination." *Id.* at 828. We also affirmed the denial of the plaintiff's Rule 59(e) motion objecting to the dismissal and seeking leave to amend, concluding that although the proposed amended complaint would "probably" be sufficient to state a claim against the two arresting officers, remand would be futile because the officers would still be entitled to qualified immunity. *Id.* at 829–30. Specifically, we stated: "Although Supreme Court opinions have clearly established the right to a prompt probable cause determination, they have not established that the duty to ensure that right rests with the arresting officer. Nor have any Tenth Circuit cases—or the majority of cases from other circuits—so held." *Id.* at 830.

To the extent appellants rely on *Strepka* for the proposition that each of them is entitled to qualified immunity because it is not clearly established which of them is responsible for violating Wilson's constitutional rights, we are unpersuaded. First, as an unpublished decision, *Strepka* is not binding on this court. *See* 10th Cir. R. 32.1(A). Second, *Strepka*'s assertion this court has never held that an arresting officer has a duty to ensure an arrestee receives a prompt

-9-

probable cause determination is inaccurate. In *Austin v. Hamilton*, 945 F.2d 1155, 1162–63 (10th Cir. 1991), *abrogated on other grounds by Johnson v. Jones*, 515 U.S. 304, 309–20 (1995), this court affirmed the denial of summary judgment to federal agents who refused to provide detainees with probable cause hearings.[6] Finally, we are persuaded by the opinions of other circuits which have rejected appellants' position that "someone else" had a duty to provide a prompt probable cause determination. *See Drogosch v. Metcalf*, 557 F.3d 372, 378–79 (6th Cir. 2009) (looking to state law to determine who is responsible for ensuring a prompt probable cause determination after arrest and concluding, in Michigan,

[6]Appellants' attempts to distinguish *Austin* are unpersuasive. First, appellants argue *Austin* does not establish who has the duty to ensure a detainee receives a probable cause determination. *Austin* did, however, conclude the defendants, who effected the plaintiffs' arrests and detentions, could be held liable for the plaintiffs' prolonged detentions without probable cause. *Austin v. Hamilton*, 945 F.2d 1155, 1162–63 (10th Cir. 1991), *abrogated on other grounds by Johnson v. Jones*, 515 U.S. 304, 309–20 (1995). In so concluding, the court in *Austin* read *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975), as sufficient authority to overcome the defendants' assertions of qualified immunity. *See id.* at 1162. At minimum, *Austin* undermines appellants' position that it is wholly unclear who has the duty to ensure a prompt probable cause determination. Second, appellants argue the additional allegations in *Austin* of excessive force and intentional detention without a probable cause determination somehow distinguish it from the present case. *Austin*'s analysis of the excessive force claims, however, is separate from its analysis of the intentional prolonged detention claims. Finally, appellants argue *Strepka* supercedes *Austin* or, at the very least, indicates the law is unclear as to who has the duty to ensure a prompt probable cause determination. *Strepka*, however, is not precedential. *See* 10th Cir. R. 32.1. Further, the court in *Austin* stated the plaintiffs' claims for prolonged detention "do not implicate unsettled law" and "invoke[d] settled fourth amendment principles predating the circumstances of this case." *Austin*, 945 F.2d at 1162.

responsibility lies with the arresting officer); *Cherrington v. Skeeter*, 344 F.3d 631, 642–45 (6th Cir. 2003) ("*County of Riverside* itself . . . would have alerted a reasonable official to . . . the existence of Cherrington's Fourth Amendment right to a judicial determination of probable cause within 48 hours . . . . Under the present record, therefore, the individual Defendants are not entitled to qualified immunity on Plaintiff Cherrington's Fourth Amendment claim . . . ."); *Luck v. Rovenstine*, 168 F.3d 323, 326 (7th Cir. 1999) ("We find unconvincing the sheriff's attempt to shrug off his federal constitutional responsibilities toward detainees . . . who have not yet had a probable cause hearing."); *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1482-83 (9th Cir. 1993) (denying qualified immunity to sheriff and jail commander for holding plaintiff for four days without probable cause determination).

Although we reject appellants' argument that the law is insufficiently clear to hold any of them responsible for ensuring Wilson received a prompt probable cause determination after his detention, it does not follow that all are necessarily liable. "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). Thus, we must examine the allegations in the complaint as to each individual appellant to determine whether a plausible claim for relief is stated. We consider New Mexico state law insofar as it bears on the scope of each appellant's responsibility to ensure a prompt probable cause determination.

*See Cherrington*, 344 F.3d at 644 ("[B]efore a defendant may be held liable under section 1983, that defendant must first *possess* power by virtue of state law, then *misuse* that power in a way that violates federal constitutional rights.").

     C.     Personal Involvement of Individual Defendants

          1.     Non-Supervisory Defendants

               a.     Torres

Wilson's allegations against Torres are limited. Wilson's complaint alleges Torres transported him from his home to the VCSO at Montano's request. The remainder of the allegations against Torres revolve around Torres' failure to file charges against Wilson or otherwise ensure Wilson received a probable cause hearing. Further, although Wilson refers to Torres as an "arresting officer" in his briefing before this court, his complaint does not indicate Torres was an arresting officer. At most, the complaint alleges Torres "assisted" Montano in effecting the arrest. Appellants' App. at 22. Further, Wilson is unable to cite any authority indicating Torres had a duty to ensure he received a prompt probable cause hearing. While Wilson cites ample authority defining the scope of an arresting officer's duties under New Mexico law related to ensuring an arrestee receives a prompt probable cause determination, *see infra* Part III.C.1.b, none of the cited authorities indicate such duties extend to any officer who assists in an arrest. Wilson's complaint therefore lacks sufficient allegations to state a plausible claim that Torres was personally involved in the violation of his right to a prompt

-12-

probable cause determination. The district court therefore erred in denying the motion to dismiss as to Torres.

b.    Montano

The complaint alleges Montano arrested Wilson without a warrant. The complaint further alleges Montano wrote out a criminal complaint, but failed to file it in any court with jurisdiction to hear the misdemeanor charge until well after Wilson was released from the VCDC. Thus, the complaint alleges Montano was the arresting officer and that he failed to initiate the criminal process by filing criminal charges or otherwise ensure Wilson was brought before a judge for a prompt probable cause determination. New Mexico law makes clear an arresting officer has a duty to ensure an arrestee receives a prompt probable cause determination. N.M. Stat. Ann. § 35-5-1 provides:

> Whenever a peace officer makes an arrest without warrant for a misdemeanor within magistrate trial jurisdiction, he shall take the arrested person to the nearest available magistrate court without unnecessary delay. In such cases, a complaint shall be filed forthwith by the peace officer and a copy given to the defendant at or before the time he is brought before the magistrate.

As discussed *supra* Part III.B, appellants concede an arrestee has a clearly established constitutional right to a prompt probable cause hearing, i.e., a hearing within forty-eight hours after arrest. *See Cnty of Riverside*, 500 U.S. at 56; *Gerstein*, 420 U.S. at 114. Thus, the complaint alleges Montano, in contravention

of his duties under New Mexico law, deprived Wilson of his clearly established constitutional rights.

These allegations, taken as true, are sufficient to overcome Montano's assertion of qualified immunity. *See Drogosch*, 557 F.3d at 378–79 (applying a substantially similar Michigan statute to conclude arresting officer was not entitled to qualified immunity for violating arrestee's rights under *Gerstein*); *Cherrington*, 344 F.3d at 644 (holding arresting officers potentially liable for violating arrestee's rights under *Gerstein* when Ohio law placed duty to ensure prompt probable cause determination on arresting officer); *Hallstrom*, 991 F.2d at 1478-82 & 1482 n.22 ("[T]he laws of Idaho guaranteeing timely presentation to a magistrate . . . place substantive limitations on official discretion and contain explicitly mandatory language sufficient to create a liberty interest protected by the Fourteenth Amendment and actionable under Section 1983." (quotations and alterations omitted)); *see also Cnty. of Riverside*, 500 U.S. at 52-53 (permitting states to develop their own specific procedures to ensure prompt probable cause determinations). Further, a reasonable official in Montano's position "would understand that what he is doing violates" Wilson's right to a prompt probable cause hearing. *Anderson*, 483 U.S. at 640. The complaint therefore alleges sufficient personal involvement on Montano's part to state a plausible claim for

relief under § 1983, and the district court correctly denied appellants' motion to dismiss as to Montano.[7]

### 2.    Supervisory Defendants

In *Dodds v. Richardson*, this court held a plaintiff may establish the individual liability of a supervisor for a constitutional violation under § 1983 by demonstrating: "(1) the defendant promulgated, created, implemented or possessed personal responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional violation."  614 F.3d 1185, 1199 (10th Cir. 2010).  The plaintiff in *Dodds* brought a § 1983 suit, alleging a sheriff,

---

[7]Appellants characterize Wilson's allegations against Montano as asserting he failed to timely file a complaint.  Moreover, appellants argue, because New Mexico's Rules of Criminal Procedure for Magistrate Courts provide that a complaint can be filed more than forty-eight hours after arrest, *see* N.M.R.A. 6-201, the timely filing of a criminal complaint does not ensure a prompt probable cause determination in all cases.  Appellants therefore assert Wilson's allegation that Montano failed to timely file a complaint is insufficient to show Montano's personal involvement in the violation of Wilson's right to a prompt probable cause determination.  These arguments are unpersuasive.  First, Wilson alleged not that Montano failed to timely file criminal charges, but that Montano failed to take any action whatsoever to ensure a prompt probable cause determination while Wilson was being held at the VCDC.  Second, Wilson need not allege that the timely filing of a criminal complaint will always ensure a defendant receives a timely probable cause determination in every possible circumstance.  It is sufficient to withstand a motion to dismiss that his allegations support an inference of causation in this case.  Drawing all inferences in the light most favorable to Wilson, we can readily conclude the complaint sufficiently alleges Montano's failure to promptly file criminal charges caused Wilson's prolonged detention.

acting in his individual capacity, "violated his Fourteenth Amendment due process rights by depriving him of his protected liberty interest in posting bail." *Id.* at 1189. The district court denied the sheriff's qualified-immunity based motion for summary judgment, and the sheriff appealed. *Id.* at 1190. This court recognized that "Oklahoma law charged Defendant as sheriff with the responsibilities of running the county jail and accepting bail from . . . arrestees." *Id.* at 1203. Thus, "Oklahoma law made Defendant responsible for the policies that operated and were enforced by his subordinates at the jail." *Id.* Moreover, the sheriff admitted that he allowed the policies, which caused the deprivation of Dodds' constitutional rights, to operate. *Id.* The facts showed the sheriff's conduct in maintaining these policies at the jail caused Dodds to be deprived of his due process rights and, therefore, showed the sheriff was personally involved in the constitutional deprivation. *Id.* at 1204.

This court also concluded: "Plaintiff's right to be free from unjustified detention after his bail was set was clearly established such that a reasonable official in Defendant's position [at the time] would have understood that his deliberately indifferent maintenance of the policies that prevented arrestees from posting preset bail for no legitimate reason violated the Constitution." *Id.* at 1206. In so concluding, this court noted that "other cases of ours and the great weight of authority from other circuits clearly established by 2007 that officials may be held individually liable for policies they promulgate, implement, or

-16-

maintain that deprive persons of their federally protected rights." *Id.* at 1207.

We therefore held the plaintiff had "shown facts that, if proven at trial, establish

Defendant violated his clearly established rights." *Id.*

New Mexico law sets forth the respective duties of wardens and sheriffs in

ensuring detainees receive a prompt probable cause determination. New Mexico

law charged Sheriff Rivera with the responsibility of running the VCDC and

ensuring arrestees received a prompt probable cause determination. *See, e.g.*,

N.M. Stat. Ann. § 4-37-4(A) ("It is the duty of every county sheriff . . . to: (1)

enforce the provisions of all county ordinances; [and] (2) diligently file a

complaint or information alleging a violation if circumstances would indicate that

action to a reasonably prudent person . . . ."); *id.* § 4-41-2 ("The sheriff shall be

conservator of the peace within his county" and shall "cause all offenders to . . .

appear at the next term of the court and answer such charges as may be preferred

against them."); *id.* § 29-1-1 (declaring it "the duty of every sheriff . . . to . . .

diligently file a complaint or information, if the circumstances are such as to

indicate to a reasonably prudent person that such action should be taken . . . .");

*id.* § 31-1-5(B) ("Every accused shall be brought before a court having

jurisdiction to release the accused without unnecessary delay."); *id.* § 33-3-1(A)

("The common jails shall be under the control of the respective sheriffs . . . .").

New Mexico law charged Warden Chavez with similar responsibilities. *See, e.g.*,

*id.* § 33-1-2(E) (stating "'warden' . . . means the administrative director of a

-17-

correctional facility"); *id.* § 33-2-15 ("The employees of the penitentiary shall perform such duties in the charge and oversight of the penitentiary, care of the property belonging thereto, and in the custody, government, employment and discipline of the convicts as shall be required of them by the corrections division [corrections department] or the warden, in conformity with law and rules and regulations prescribed for the government of the penitentiary."); *id.* § 33-3-1(A) ("The common jails shall be under the control of the respective . . . jail administrators hired by the board of county commissioners or other local public body or combination thereof . . . ."). Thus, under New Mexico law both Warden Chavez and Sheriff Rivera were responsible for the policies or customs that operated and were enforced by their subordinates at the VCDC and VCSO and for any failure to adequately train their subordinates. We therefore consider the allegations against each supervisory defendant to determine whether they meet the *Dodds* requirements for imposing individual liability under § 1983.

a.     Warden Chavez

The complaint alleges Warden Chavez "established a policy or custom of holding citizens without pending criminal charges until the court filed orders of release sua sponte." Allegedly, these policies or customs were "a significant moving force behind Plaintiff's illegal detention." The complaint further alleges Warden Chavez's policy of holding citizens without court orders caused the violation of Wilson's Fourth Amendment right to a prompt probable cause

-18-

determination. That is, because Warden Chavez failed to require the filing of written complaints, detainees, including Wilson, were held at the VCDC without receiving prompt probable cause determinations. The complaint also alleges Warden Chavez inappropriately trained his employees, which led to the violation of Wilson's right to a prompt probable cause determination. Indeed, the complaint alleges there were numerous occasions where the VCDC and the VCSO held individuals for days and, on some occasions, weeks, without law enforcement taking those individuals before a magistrate judge.

These allegations, taken as true, sufficiently establish Warden Chavez promulgated policies which caused the constitutional harm of which Wilson complains, i.e., his prolonged detention without a probable cause hearing. *See Dodds*, 614 F.3d at 1195-96 (stating a causal connection is alleged by claiming a supervisor defendant "set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive plaintiff of [his] constitutional rights" (quotations omitted)). That Wilson has not alleged he had any direct contact with Warden Chavez or that Warden Chavez actually knew of Wilson's specific circumstances is of no consequence. *See id.* at 1195 ("Personal involvement does not require direct participation because § 1983 states any official who 'causes' a citizen to be deprived of her constitutional rights can also be held liable." (quotations and alteration omitted)).

Finally, the complaint alleges sufficient facts to establish Warden Chavez acted with the requisite mental state. To establish a violation of § 1983 by a defendant-supervisor, the plaintiff must establish, at minimum, a deliberate and intentional act on the part of the supervisor to violate the plaintiff's legal rights. *Porro v. Barnes*, 624 F.3d 1322, 1327-28 (10th Cir. 2010). The complaint alleges Warden Chavez acted with deliberate indifference to routine constitutional violations occurring at the VCDC. This allegation is supported by Wilson's assertions that there were numerous prior occasions in which individuals at the VCDC and VCSO were subject to prolonged warrantless detention. *See supra* n.3. Appellants do not challenge the district court's conclusion that deliberate indifference is a sufficiently culpable mental state to impose supervisory liability under § 1983. The complaint's allegations against Warden Chavez therefore state a plausible claim for relief under *Dodds*, and the district court did not err in denying the motion to dismiss as to Warden Chavez.

b.      Sheriff Rivera

The allegations in the complaint as to Sheriff Rivera are similar to those against Warden Chavez. The complaint alleges Sheriff Rivera "established a policy or custom of allowing officers to arrest people and wait before filing charges;" that "[i]n some circumstances this policy or custom resulted in the arrest and detention of citizens with charges never being filed;" that Sheriff Rivera was deliberately indifferent to the ongoing constitutional violations which

-20-

occurred under his supervision and due to his failure to adequately train his employees; that the "routine warrantless arrest and incarceration of citizens without charges being filed amounted to a policy or custom of VCSO which was set forth by [Sheriff] Rivera," and that such policy was "a significant moving force behind [Wilson's] illegal detention." As with Warden Chavez, these allegations, if proven, are sufficient to establish Sheriff Rivera's individual liability for Wilson's unconstitutional detention under *Dodds*, and the district court did not err in denying the motion to dismiss as to Sheriff Rivera.

> D.     Additional Arguments

> 1.     Magistrate Court Rules

Notwithstanding the numerous New Mexico statutes which spell out in detail the duties of the arresting officers, warden, and sheriff as they relate to providing citizens with a prompt post-arrest probable cause determination, appellants cite to several provisions of New Mexico's Rules for Magistrate Courts in an attempt to argue it is unclear who has the responsibility for ensuring an arrestee ensures a prompt probable cause determination. *See* N.M.R.A. 6-201(D) ("If the court is not open at the time the copy of the complaint is given to the defendant, and the defendant remains in custody, the complaint shall be filed the next business day of the court."); N.M.R.A. 6-203(A) ("The probable cause determination shall be made by a magistrate, metropolitan or district court judge promptly, but in any event within forty-eight (48) hours after custody commences

-21-

and no later than the first appearance of the defendant whichever occurs earlier.")
Appellants take the position that, because these provisions do not explicitly assign
responsibility for ensuring a prompt probable cause determination is made to one
particular party (e.g. the sheriff, warden, arresting officer, or court), it cannot be
clearly established that any of them violated Wilson's constitutional rights. This
argument is unavailing. The rules cited by appellants are not inconsistent with
the numerous New Mexico statutes, discussed *supra* Part III.C, which delineate
the duties of the arresting officers, sheriff, and warden to ensure an arrestee
receives a timely post-arrest probable cause determination. Thus, they do not
undermine the conclusion that officials in the positions of Montano, Warden
Chavez, or Sheriff Rivera would have known their actions violated Wilson's
constitutional rights. *See Anderson*, 483 U.S. at 640.[8]

---

[8]Similarly unavailing is appellants' reliance on a memo from the New Mexico Administrative Office of the Courts discussing the requirements of Rule 6-203 and the importance of the magistrate courts establishing procedures to ensure arrestees receive a timely probable cause determination. The memo's silence on the duties of parties other than the magistrate courts is wholly unremarkable, as the memo was promulgated by the administrative arm of the New Mexico judiciary and concerns the rules of procedure for New Mexico courts. Moreover, nothing in the memo, or the rule it interprets, suggests a magistrate's independent obligation to make a probable cause determination within forty-eight hours of arrest somehow relieves other parties of their respective duties to ensure such a determination is possible.

2.      N.M. Stat. Ann. § 33-3-12(B)

Finally, appellants argue it would have been impossible to provide Wilson with the relief he sought due to operation of N.M. Stat. Ann. § 33-3-12(B), which provides: "Any jailer who deliberately and knowingly releases a prisoner without an order of release . . . except upon expiration of the prisoner's term of commitment, is guilty of a misdemeanor and shall be removed from office." Before the district court, appellants argued the existence of § 33-3-12(B) amounted to an extraordinary circumstance which "so prevented [them] from knowing that [their] actions were unconstitutional that [they] should not be imputed with knowledge of a clearly established right." *Shero*, 510 F.3d at 1204. Before this court, appellants argue simply that § 33-3-12(B) contributes to a lack of clarity under New Mexico law as to which party is responsible for ensuring a prompt probable cause determination. In either case, this argument is unpersuasive. Wilson does not argue appellants had an obligation to release him. Rather, he argues they had a duty to provide him with a prompt probable cause determination. Those appellants with a duty to ensure Wilson received a prompt probable cause determination could have done so without releasing him in contravention of § 33-3-12. Thus, § 33-3-12 does not constitute an "extraordinary circumstance" which excuses appellants' violation of Wilson's constitutional rights, nor does it undermine the conclusion that those rights were clearly established.

## IV.    Conclusion

The district court erred in denying the motion to dismiss as to Torres.  The district court correctly denied the motion to dismiss as to Montano, Chavez, and Rivera.  For the foregoing reasons, the order of the district court is therefore **affirmed** in part, **reversed** in part, and **remanded** for further proceedings not inconsistent with this opinion.