FILED
United States Court of Appeals
Tenth Circuit

October 3, 2024

Christopher M. Wolpert
Clerk of Court

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

TRINI ENCINIAS, as personal
representative of the Estate of Adonus R.
Encinias, deceased,

      Plaintiff - Appellant,

v.

NEW MEXICO CORRECTIONS
DEPARTMENT; BEVERLY
WOODBURY; TITO VIDAL; ISABELLE
DOMINGUEZ; CHRIS MAURER,

      Defendants - Appellees.

No. 23-2052
(D.C. No. 1:21-CV-01145-KG-SCY)
(D. N.M.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **McHUGH**, **EBEL**, and **EID**, Circuit Judges.
_____

Plaintiff-Appellant Trini Encinias, personal representative of the estate of her

son, Adonus Encinias, appeals the district court's dismissal under Fed. R. Civ. P.

12(b)(6) of her claim against Defendant-Appellees Isabelle Dominguez, Chris

Maurer, Beverly Woodbury, and Tito Vidal.  Mr. Encinias was an inmate in the

custody of the New Mexico Corrections Department (NMCD) who had serious

mental health conditions and had attempted suicide on multiple previous occasions.

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Mr. Encinias tragically died by suicide while in NMCD custody.  Plaintiff then brought a claim under 42 U.S.C. § 1983 against Defendants—all of whom worked as NMCD mental health staff and interacted with, and evaluated, Mr. Encinias while he was in custody—alleging that they were deliberately indifferent to Mr. Encinias' serious medical needs in violation of the Eighth Amendment's prohibition on cruel and unusual punishment—as made applicable to the states through the Fourteenth Amendment.  See Estelle v. Gamble, 429 U.S. 97, 101 (1976).  The district court dismissed that claim with prejudice after holding that Defendants were entitled to qualified immunity because they did not violate a clearly established constitutional right.  Plaintiff appeals that decision.  Having jurisdiction under 28 U.S.C. § 1291, we AFFIRM.

## I. BACKGROUND

In this appeal from the district court's dismissal of Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6), we accept the well-pleaded factual allegations in the Complaint as true.  Wilson v. Montano, 715 F.3d 847, 852 (10th Cir. 2013).[1]  Adonus Encinias, the twenty-two-year-old son of Plaintiff Trini Encinias, entered the custody of the NMCD on February 21, 2018, after pleading guilty to criminal charges.  As would be documented by psychiatrists and other mental health staff during Mr. Encinias' time in NMCD custody, he suffered from, among other conditions, substance abuse disorder, addiction, and severe depression—for which Mr. Encinias

---

[1] Plaintiff's Second Amended Complaint ("Complaint") is the operative complaint in this case.

2

took psychotropic medication—and he had a history of hospitalizations, therapeutic interventions, and suicide attempts before he entered NMCD custody.

While in NMCD custody, Mr. Encinias continued to suffer from severe mental health conditions.[2]  During his nine months in custody, Mr. Encinias was seen by psychiatrists on twelve occasions.  Psychiatrists diagnosed Mr. Encinias with anxiety, depression, post-traumatic stress disorder, psychosis, and substance abuse disorder; prescribed medications for his conditions, including Seroquel, Duloxetine, Haldol, and Benadryl; and adjusted his medications.  Mr. Encinias requested additional treatment, including therapy, on multiple occasions.  NMCD mental health staff indicated in Mr. Encinias' file that he was "court-ordered for RDAP"—meaning the Residential Drug Abuse Program—and noted that recommended programming included substance abuse treatment, anger management, psychiatry, and RDAP. (Complaint 5 ¶ 23).  Psychiatrists also at times indicated in Mr. Encinias' file that they recommended treatment and programming beyond medication.  See, e.g., (Complaint 15 ¶ 79) (note by Dr. Cruz, a psychiatrist, who saw Mr. Encinias while he was on suicide watch, that "[m]ore psych meds are NOT the answer – he needs school.").  However, Mr. Encinias was never enrolled in therapy.

---

[2] Mr. Encinias was frequently transferred between NMCD facilities, including the Central New Mexico Correctional Facility (CNMCF), Northeast New Mexico Correctional Facility (NENMCF), and Southern New Mexico Correctional Facility (SNMCF).

3

Mr. Encinias was placed in "solitary restrictive housing units" twelve different times while in NMCD custody.[3]  He at times harmed himself and attempted suicide.[4] On December 2, 2018, Mr. Encinias was found dead by suicide.

We briefly review the allegations in the Complaint specific to each individual Defendant—Isabelle Dominguez, Chris Maurer, Beverly Woodbury, and Tito Vidal. See Wilson, 715 F.3d at 852 ("In the context of a § 1983 action against multiple individual governmental actors, 'it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what to whom*, to provide each individual with fair notice as to the basis of the claims against him or her.'" (emphasis in original) (quoting Robbins v. Oklahoma, 519 F.3d 1242, 1250 (10th Cir. 2008))).  The Complaint alleges that Ms. Dominguez and Mr. Maurer were "NMCD mental health employees."  (Complaint 25 ¶ 135).  Mr. Maurer was Ms. Dominguez's supervisor.

---

[3] The Complaint alleges that NMCD policy required assessing whether an inmate's mental health conditions "contraindicate the placement [in restrictive housing]."  (Complaint 7 ¶ 38).  And the Complaint alleges this policy was created "because the conditions of restrictive housing are well known as posing extraordinary dangers to individuals with mental illness and suicidal ideation."  (Id. at 7-8 ¶ 39).

[4] Mr. Encinias wrote a suicide note to his mother and attempted suicide on May 7, 2018.  That note was intercepted by NMCD staff on May 14, and it was included in Mr. Encinias' file.  On July 18, Mr. Encinias was placed on suicide watch after reporting that he was actively trying to commit suicide.  He remained on suicide watch until July 20.  He was placed on suicide watch again on August 22, after he cut his arms and informed staff that he would commit suicide if he could not speak with a mental health provider.  He was taken off suicide watch the next day.  Finally, Mr. Vidal placed Mr. Encinias on suicide watch on November 17, and Mr. Encinias was taken off suicide watch on November 20.  Plaintiff alleges that Mr. Encinias was removed from suicide watch "at the final hour possible before NMCD policy would have required that he be evaluated by a psychiatrist," although the decision to remove him was not made by a Defendant in this case.  (Complaint 21 ¶ 112).

The Complaint refers to Ms. Woodbury as a "behavioral health therapist."  (Id. at 21 ¶ 111).  And the Complaint alleges that Mr. Vidal was a "provisionally-licensed social worker."  (Id. at 21 ¶ 109).

As an initial matter, it was alleged that all four Defendants here— Ms. Dominguez, Mr. Maurer, Ms. Woodbury, and Mr. Vidal—had access to, and "reviewed," Mr. Encinias' medical and mental health files.  (Id. at 24 ¶ 130).[5]  The allegations in the Complaint indicate that these files included documentation of the treatment and evaluation received by Mr. Encinias throughout his nine months in state custody.[6]  We therefore consider Defendants' alleged conduct with the understanding that they had notice of his psychiatric treatment.

_____

[5] With respect to Ms. Dominguez, Mr. Maurer, and Mr. Vidal, the Complaint alleges that they actually "reviewed" the files.  (Complaint 24 ¶ 130).  With respect to Ms. Woodbury, the Complaint alleges, "[u]pon information and belief, Ms. Woodbury also possessed [the information in the files], as it was common practice of NMCD mental health staff to review a patient's entire file before beginning to treat him."  (Id. at 25 ¶ 131).

[6] See (Complaint 5 ¶ 24) ("On March 6, 2018, while housed at CNMCF, Mr. Encinias was first seen by a prison psychiatrist, Dr. Tabet, who documented in Mr. Encinias' prison file . . ."); (id. at 6 ¶ 33) ("On April 2, 2018, Mr. Encinias was evaluated by Centurion psychiatrist Dr. Vera . . . . Dr. Vera noted in Mr. Encinias' file . . ."); (id. at 11 ¶¶ 57-58) ("Mr. Encinias' next psychiatric appointment did not occur until May 21, 2018, when he was seen by Dr. Nielson while housed NENMCF [sic] . . . . During this appointment, Dr. Nielson documented that Mr. Encinias had a history of three prior suicide attempts before his incarceration."); (id. at 12 ¶ 66) ("Mr. Encinias' next psychiatric appointment did not occur until July 2, 2018, when he met with Dr. Granger at CNMCF. Notably, Dr. Granger documented that Mr. Encinias reported severe depression, chronic anxiety, irritability, insomnia, and hallucinations."); (id. at 13 ¶ 69) ("On July 18, 2018, Mr. Encinias was placed on suicide watch," which was reported in a "crisis intervention report"); (id. at 14 ¶ 73) ("On August 8, 2018, SNMCF psychiatrist Dr. Cruz evaluated Mr. Encinias . . . Dr. Cruz noted that Mr. Encinias was still experiencing active auditory and visual hallucinations . . ."); (id. at 21 ¶ 111) ("On November 19, 2018, Mr. Encinias was

Ms. Dominguez and Mr. Maurer first saw Mr. Encinias at SNMCF on August 20, 2018. They noted Mr. Encinias' mental health concerns in his file and—acting with knowledge of Mr. Encinias' psychiatric treatment—failed to refer him or enroll him in additional mental health treatment—specifically, counseling.[7] Then, after Mr. Encinias was placed on suicide watch, taken off suicide watch, and seen twice by a psychiatrist at SNMCF, Mr. Maurer again assessed Mr. Encinias on August 27, noted that he was depressed, and Mr. Maurer did not attempt to provide Mr. Encinias with additional treatment. Ms. Dominguez spoke with Mr. Encinias on September 6 and noted that he was "desperate to meet with behavioral health," and she again did not attempt to facilitate additional treatment. (Id. at 17 ¶ 90).

Ms. Woodbury first saw Mr. Encinias while he was on suicide watch at CNMCF on November 19, 2018. She noted "no changes" in Mr. Encinias' mental health status. (Id. at 21 ¶ 111). Mr. Encinias was taken off suicide watch on November 20, and Ms. Woodbury saw him again on November 21. She noted that Mr. Encinias declined to be interviewed for his release assessment and left a required assessment form blank—allegedly violating NMCD policy—but she indicated that

---

seen by behavioral health therapist Ms. Woodbury, who noted that there were 'no changes' in his mental health status"); (id. at 19 ¶ 99) ("Upon [Mr. Encinias'] return" to CNCMF on November 9, 2018, "Mr. Vidal completed a mental status examination form"); (id. at 14 ¶ 74) ("On August 20, 2018, Mr. [sic] Dominguez and her supervisor, Mr. Maurer, completed a behavioral health check form for Mr. Encinias").

[7] That Ms. Dominguez and Mr. Maurer had notice of Mr. Encinias' treatment by psychiatrists is supported by the fact that they were present at "weekly Thursday meetings held by Dr. Cruz," one of the psychiatrists who treated Mr. Encinias. (Complaint 25 ¶ 132).

Mr. Encinias "need[ed] the highest level of services." (Id. at 22 ¶ 116).  Finally, Ms. Woodbury saw Mr. Encinias on November 27, 2018—just five days before his death—and noted "no mental health concerns." (Id. at 22 ¶ 118).  Ms. Woodbury never facilitated additional mental health treatment for Mr. Encinias.

Mr. Vidal first saw Mr. Encinias at CNMCF on November 8, 2018.  Mr. Vidal completed a mental health status examination form indicating that he had reviewed Mr. Encinias' file, but he did not get the form signed by a supervisor as required. Mr. Vidal met with Mr. Encinias again on November 15 and recommended that he read a pamphlet about relaxation.  On November 17, Mr. Vidal completed a mental status examination and classified Mr. Encinias as "Clearance Level 5," which, according to Mr. Vidal, meant Mr. Encinias "needed the highest level of care and treatment." (Id. at 20 ¶¶ 104-05).  Mr. Encinias refused to reassure Mr. Vidal that he would not attempt suicide, and Mr. Vidal placed him on suicide watch and "recommended that behavioral health intervene." (Id. at 20 ¶¶ 106-08).  Mr. Vidal did not contact a psychiatrist or take further steps to facilitate additional treatment. Mr. Vidal saw Mr. Encinias the next day and kept him on suicide watch because Mr. Encinias "would not provide sufficient reason for his safety and security." (Id. at 21 ¶ 110).  Finally, the Complaint alleges that, when Mr. Encinias was taken off suicide watch and placed in restrictive housing on November 20, Mr. Vidal was aware that Mr. Encinias was only allowed out of his cell for one hour a day and could have referred Mr. Encinias to the mental health treatment center, but he decided not to.

7

## II. PROCEDURE

As relevant here, Plaintiff, acting as personal representative of Mr. Encinias' estate, asserted a claim under 42 U.S.C. § 1983 against Ms. Dominguez, Mr. Maurer, Ms. Woodbury, and Mr. Vidal alleging deliberate indifference to Mr. Encinias' serious medical needs in violation of the Eighth and Fourteenth Amendments. (Complaint 45-46).[8] Defendants moved under Fed. R. Civ. P. 12(b)(6) to dismiss that claim. Specifically, as relevant here, Defendants argued they were entitled to qualified immunity because their conduct, as alleged in the Complaint, did not violate Mr. Encinias' clearly established constitutional rights. The district court granted the motion to dismiss, concluding that, while the allegations in the Complaint were sufficient to state a constitutional claim against Defendants, they were entitled to qualified immunity because they did not violate clearly established law. The district court dismissed Plaintiff's claim against Defendants with prejudice, and Plaintiff now appeals that decision.

---

[8] Plaintiff asserted the deliberate indifference claim against other individual defendants, but the district court granted a joint motion to dismiss those defendants. Plaintiff also asserted three other claims: 1. An Eighth and Fourteenth Amendment claim, brought under 42 U.S.C. § 1983, against Centurion Correctional Healthcare of New Mexico, LLC—a healthcare provider for NMCD facilities—and MHM Health Professionals, Inc.—Centurion's subcontractor; 2. A claim under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., against the NMCD; and 3. A claim under the Rehabilitation Act, 29 U.S.C. § 701 et seq., against the NMCD. (Complaint 46-52). The district court granted joint motions to dismiss Centurion and MHM. Additionally, in the order at issue on appeal, the district court dismissed Plaintiff's ADA and Rehabilitation Act claims under Fed. R. Civ. P. 12(b)(6). Plaintiff does not challenge the dismissal of those claims on appeal.

### III. STANDARD OF REVIEW

"We review de novo a district court's ruling on a motion to dismiss a complaint because of qualified immunity." Thompson v. Ragland, 23 F.4th 1252, 1255 (10th Cir. 2022). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see Twombly, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" (citations omitted)).

Here, Defendants moved to dismiss the § 1983 claims against them on qualified immunity grounds. "A § 1983 defendant's assertion of qualified immunity is an 'affirmative defense [that] creates a presumption that the defendant is immune from suit.'" Truman v. Orem City, 1 F.4th 1227, 1235 (10th Cir. 2021) (citation omitted). "To overcome this presumption, the plaintiff must show (1) the defendant's actions violated a constitutional or statutory right, and (2) that right was clearly established at the time of the defendant's complained-of conduct." Id.

"A right is clearly established for qualified immunity purposes if 'every reasonable official would have understood that what he is doing violates that right.'" Crane v. Utah Dep't of Corr., 15 F.4th 1296, 1303 (10th Cir. 2021) (quoting Mullenix v. Luna, 577 U.S. 7, 11 (2015)). Generally, this means that "there must be

9

a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Schwartz v. Booker, 702 F.3d 573, 587 (10th Cir. 2012) (citation omitted). The inquiry focuses on cases decided before the alleged violative conduct or cases addressing the state of the law on dates before the alleged violative conduct. Crane, 15 F.4th at 1304 n.7. Precedent need not be "directly on point," but it "must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011); Crane, 15 F.4th at 1303 ("Still, clearly established law must remain moored in a specific set of facts."). However, "[e]ven when no precedent involves facts 'materially similar' to [the facts of the present case], the right can be clearly established if a precedent applies with 'obvious clarity.'" Lowe v. Raemisch, 864 F.3d 1205, 1210 (10th Cir. 2017) ("When the public official's conduct is egregious, even a general precedent would apply with obvious clarity.").

## IV. DISCUSSION

This court has "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009). Consistent with the district court, we choose here to address first whether Defendants' conduct, as alleged in the Complaint, violated a clearly established constitutional right. We conclude that Defendants did not violate clearly established law and are therefore entitled to qualified immunity. Thus, we do not address whether any of these defendants violated a constitutional right held by Mr. Encinias.

10

### 1. Defining the Right at Issue

To determine whether Defendants' qualified immunity defense should fail—i.e., whether they violated a clearly established constitutional right—we must define the right at issue. "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" Mullenix, 577 U.S. at 12 (emphasis in original) (quoting al-Kidd, 563 U.S. at 742). "[T]his inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (citation omitted). As explained above, our analysis focuses on the specific allegations against each Defendant, rather than broad or generalized allegations in the Complaint. See Wilson, 715 F.3d at 852.

Plaintiff argues on appeal that all four Defendants violated a clearly established right because they failed "to take *any* steps to protect [Mr. Encinias] from his substantial risk of suicide." (Aplt. Br. 17) (emphasis in original).[9] This characterization of the right

---

[9] While we do not decide in this appeal whether Defendants violated Mr. Encinias' constitutional rights, we briefly note the standards which would govern Plaintiff's deliberate indifference claim:

"Deliberate indifference" involves both an objective and a subjective component. The objective component is met if the deprivation is "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 [] (1994). A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir. 1999) (quoting Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980) (further quotation omitted)). The subjective component is

at issue is not supported by the factual allegations in the Complaint.  Importantly, as described above, all four Defendants were alleged to have provided some medically related assistance to Mr. Encinias and to have reviewed Mr. Encinias' file, and therefore they would have been on notice of Mr. Encinias' evaluations by psychiatrists, prescriptions for medications to address his mental health conditions, and multiple placements on suicide watch.  However, no Defendant arranged for counseling for Mr. Encinias, which is the medical assistance he was requesting.  When considering whether Defendants violated clearly established law, our analysis must account for the fact that Mr. Encinias received—and Defendants were aware that he received—some treatment for his mental health conditions and measures to protect him from suicide.[10]

---

met if a prison official "knows of and disregards an excessive risk to inmate health or safety."  Farmer, 511 U.S. at 837 [].

Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000).  "An official disregards risk when he fails to take reasonable measures to abate the risk."  Lucas v. Turn Key Health Clinics, LLC, 58 F.4th 1127, 1137 (10th Cir. 2023).  However, "[d]isagreement about course of treatment or mere negligence in administering treatment do not amount to a constitutional violation."  Strain v. Regalado, 977 F.3d 984, 987 (10th Cir. 2020).

[10] The district court correctly explained that the mere provision of some treatment does not prevent liability for deliberate indifference.  See Lucas, 58 F.4th at 1139 ("[M]erely doing *something* (with no reference to the underlying condition) does not necessarily insulate one from liability.  Instead, a court may need to determine whether there was the functional equivalent of a complete denial of care in light of the specific circumstances." (emphasis in original)).  Additionally, the district court correctly noted that the qualified immunity inquiry focuses on each individual Defendant's conduct—not the aggregate conduct of all persons with whom Mr. Encinias interacted while in custody.

However, while we do not address whether Defendants' alleged conduct violated the Constitution, we note that the consistent provision of treatment by medical professionals is a relevant consideration when determining whether prison officials with

Ultimately, based on the factual allegations against each Defendant, (see supra 6-8), the district court correctly framed the inquiry: whether case law at the time of Defendants' alleged conduct clearly established "that failure to prescribe or facilitate therapeutic treatment" for Mr. Encinias—who had serious mental health diagnoses, was at risk of suicide, and was treated by several psychiatrists—"was a constitutional violation." (Aplt. App. 135).

### 2. Analysis

We conclude that Plaintiff failed to carry her burden of establishing that Ms. Dominguez, Mr. Maurer, Ms. Woodbury, and Mr. Vidal violated clearly established law. First, none of the Tenth Circuit decisions cited by Plaintiff addressed a failure by prison officials to facilitate therapeutic treatment. (Aplt. Br. 17-21); Est. of Hocker by Hocker v. Walsh, 22 F.3d 995, 1000 (10th Cir. 1994) (holding prison staff were not deliberately indifferent when they failed to seek medical treatment for detainee who was intoxicated, but did not show signs that she was a suicide risk); Cox v. Glanz, 800 F.3d 1231, 1247 (10th Cir. 2015) (claim involving "an inmate's right to proper prison suicide screening procedures during booking"); Lucas, 58 F.4th at 1134-35, 1139 (claim involving lack of treatment for cervical cancer, and decided in 2023, after Defendants' alleged conduct here); Mata v. Saiz, 427 F.3d 745, 748-49, 758 (10th Cir. 2005) (claim involving failure to treat chest pain culminating in a heart attack); Kikumura v. Osagie, 461 F.3d 1269, 1295

---

awareness of that treatment were deliberately indifferent by failing to facilitate further treatment.

(10th Cir. 2006) (claim involving delay in treating detainee suffering severe pain and vomiting) (overruled on other grounds by Twombly, 550 U.S. 544 as explained in Robbins, 519 F.3d at 1246-47; Sealock, 218 F.3d at 1208, 1211 (claim involving failure to treat a heart attack); Crowson v. Washington Cnty., 983 F.3d 1166, 1173 (10th Cir. 2020) (claim involving failure to treat severe metabolic condition, and decided after Defendants' alleged conduct here); Oxendine v. Kaplan, 241 F.3d 1272, 1274 (10th Cir. 2001) (claim involving inadequate care in re-attaching detainee's severed fingertip).

Also, while "the weight of authority from other courts can clearly establish a right," two of the three out-of-circuit cases cited by Plaintiff did not involve a failure to provide therapy. Irizarry v. Yehia, 38 F.4th 1282, 1295 (10th Cir. 2022) (citation omitted). See (Aplt. Br. 18); Penn v. Escorsio, 764 F.3d 102, 106-07, 113 (1st Cir. 2014) (claim involving failure to take *any* steps in face of substantial suicide risk, centered on officials' failure to place detainee in suicide prevention cell, and not involving deprivation of therapy); Sanville v. McCaughtry, 266 F.3d 724, 734, 738-39 (7th Cir. 2001) (claims involving failure by doctors to identify that detainee was suicide risk and failure of prison officials to physically protect detainee on the day he committed suicide). And while the Third Circuit's 2017 decision in Palakovic v. Wetzel recognized a deliberate indifference claim against prison officials who failed to provide additional mental health treatment, such as counseling, even though the inmate was seen by psychological staff on a few occasions and prescribed medication, that lone decision does not constitute "the weight of authority from other

14

courts" necessary to clearly establish a right in this circuit. 854 F.3d 209, 228-29 (3d Cir. 2017); cf. Irizarry, 38 F.4th at 1294 (finding right clearly established when it was supported by one Tenth Circuit case and "persuasive authority from six other circuits").[11]

## V. CONCLUSION

In sum, the district court correctly held that Defendants are entitled to qualified immunity because their conduct, as alleged in the Complaint, did not violate clearly established law. Case law in 2018 did not put Defendants on notice that their failure to facilitate therapeutic treatment for Mr. Encinias was unconstitutional. Therefore, we AFFIRM the district court's order dismissing Plaintiff's claim with prejudice on the basis of qualified immunity.

Entered for the Court

David M. Ebel
Circuit Judge

---

[11] We also note that there are some facts that distinguish Palakovic from the present case. For example, while the inmate in Palakovic was prescribed antidepressants, he was not seen at all by a psychiatrist, and he was only seen three times by "psychology staff." Palakovic, 854 F.3d at 228. Here, Mr. Encinias was seen many times by both psychiatrists and other mental health staff.

15