UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

DAVID WEBB,

    Plaintiff - Appellee,

v.

TERRY L. THOMPSON, Sheriff for
Weber County; ROBERT WEST, Sgt. at
Weber County Correctional Facility;
ALTON JOHNSON, Sgt. at Weber County
Correctional Facility; ANDREW FLATT,
Correctional Officer at Weber County
Correctional Facility,

    Defendants - Appellants,

and

TIMOTHY SCOTT, Police Officer at
Ogden City Police Department; FNU
MURRAY, Police Officer at Ogden City
Police Department; JON GREINER, Chief
of Police at Ogden City Police Department;
KEVIN MCCLEOD, Undersheriff at
Weber County Sheriff's Office; KEVIN
BURTON, Captain and Corrections
Division Chief Deputy at Weber County
Correctional Facility; FNU GATES,
Correctional Officer at Weber County
Correctional Facility,

    Defendants.

_____

No. 15-4053
(D.C. No. 1:11-CV-00128-DB-DBP)
(D. Utah)

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **GORSUCH**, and **McHUGH**, Circuit Judges.
_____

Terry Thompson, Robert West, Alton Johnson, and Andrew Flatt (collectively,

"Weber Defendants") appeal the district court's denial of qualified immunity.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

In an interlocutory appeal from denial of qualified immunity, we view the

evidence in the light most favorable to the plaintiff and resolve all factual disputes

and reasonable inferences in his favor. Estate of Booker v. Gomez, 745 F.3d 405,

411 (10th Cir. 2014). Viewed in this light, the facts are as follows.

Thompson is the Weber County Sheriff. In that role, he is the sole and final

policymaker regarding the management and administration of the Weber County

Correctional Facility ("WCCF"). West, Johnson, and Flatt are correctional officers at

WCCF. WCCF policy prohibits strip searches for non-violent misdemeanor offenses,

absent an individualized determination of reasonable suspicion that the arrestee

possesses a weapon, criminal evidence, or other contraband.

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

On July 20, 2011, an Ogden City police officer arrested David Webb without a warrant following a traffic stop for allegedly driving with a defective license plate light. The arresting officer transported Webb to the WCCF. Although the Weber Defendants do not argue that reasonable suspicion existed that Webb possessed a weapon, criminal evidence, or other contraband, Webb was strip searched while being booked into the WCCF. West facilitated the strip search. Johnson's and Flatt's roles in the strip search are unclear. All three officers were present during at least a portion of Webb's ensuing detention.

Additionally, upon delivering Webb to the WCCF, the arresting officer completed a Weber County form titled "Probable Cause Affidavit" with information pertaining to Webb's arrest (the "Affidavit"). That form states:

> The arrestee . . . will be released automatically 48 hours from the time of booking unless a magistrate signs the order and such order is returned to the jail before that time. If the judge has refused to sign the order, the arrestee will be released within a reasonable period of time not to exceed 48 hours.

The Affidavit was placed in a filing receptacle in the WCCF's booking area to await a judge's approval or denial, consistent with the WCCF's process in place at that time. Thompson attested that his deputies were responsible for placing affidavits in the appropriate place, but they were not otherwise responsible for ensuring that an arrestee received a prompt probable cause determination. According to Thompson, a judge would visit the WCCF at least every other day to review the affidavits in the filing receptacle. But the WCCF's process did not include any mechanism to ensure that a prisoner was released if a judge failed to review the form. Thompson contends

-3-

that before Webb's arrest, the review process had successfully ensured that all prisoners received judicial probable cause determinations within 48 hours of incarceration.

No judge signed off on the Affidavit. Webb remained in the WCCF for five days without receiving a judicial probable cause determination. On July 26, 2011, Webb received a hearing, during which the prosecutor struck all charges. Webb was then released from the WCCF.

Webb filed this pro se action raising claims under 42 U.S.C. §§ 1983, 1985, and 1986, and state law. Weber Defendants moved for summary judgment based on qualified immunity. The district court denied qualified immunity to West, Johnson, and Flatt on the illegal strip search claim and denied qualified immunity to all Weber Defendants on the prolonged detention claim. Weber Defendants filed this interlocutory appeal challenging these denials of qualified immunity.

## II

"The denial of qualified immunity to a public official . . . is immediately appealable under the collateral order doctrine to the extent it involves abstract issues of law." Estate of Booker, 745 F.3d at 409 (quotation omitted). We review de novo the district court's denial of qualified immunity, construing the evidence in the light most favorable to Webb, as the non-moving party. Id. at 411. "[W]e must grant qualified immunity unless the plaintiff can show (1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct." Id. Accordingly, our jurisdiction

-4-

is limited to reviewing "(1) whether the facts that the district court ruled a reasonable jury could find would suffice to show a legal violation, or (2) whether that law was clearly established at the time of the alleged violation." Id. at 409 (quotation omitted). We lack jurisdiction "to review whether . . . the pretrial record sets forth a genuine issue of fact for trial." Id. (quotation omitted).

### A

West, Johnson, and Flatt challenge the district court's denial of qualified immunity as to Webb's illegal strip search claim. "[A] strip search is an invasion of personal rights of the first magnitude." Chapman v. Nichols, 989 F.2d 393, 395 (10th Cir. 1993). In Chapman, we held that strip searches of minor offense detainees without particularized reasonable suspicion are unconstitutional. Id. at 398. Webb was arrested for a non-violent traffic infraction. Utah Code § 41-6a-1601(7). Thus, in 2011 it was clearly established that he could not be strip searched without reasonable suspicion. And the Weber Defendants do not contend there was reasonable suspicion to strip search him.

Instead, Weber Defendants argue that Webb did not present evidence that Johnson or Flatt conducted the strip search. They maintain that the undisputed facts show that these defendants first interacted with Webb several hours after he was strip searched. Weber Defendants also contend there is no admissible evidence that West facilitated the strip search.

We lack jurisdiction to review these arguments because they concern whether the pretrial record sets forth genuine issues of fact for trial. Estate of Booker,

-5-

745 F.3d at 409. Although we could review a claim that "the facts that the district court ruled a reasonable jury could find [do not] suffice to show a legal violation," id. (quotation omitted), Weber Defendants do not advance such a claim.

Weber Defendants also argue that the Supreme Court's decision in Florence v. Bd. of Chosen Freeholders of Cty. of Burlington, 132 S. Ct. 1510 (2012), demonstrates that it was not clearly established that a strip search without reasonable suspicion was unconstitutional in 2011. In Florence, the Court held that a jail's policy of subjecting all detainees being admitted to the general population to a close visual inspection while undressed does not violate the Fourth Amendment rights of minor offenders. 132 S. Ct. at 1518-22. The Court emphasized that "correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities." Id. at 1517. However, as a Florence concurrence observed, "the Court [did] not hold that it is always reasonable to conduct a full strip search of an arrestee whose detention has not been reviewed by a judicial officer and who could be held . . . apart from the general population." Id. at 1524 (Alito, J., concurring). Thus, Weber Defendants argue that Florence rendered the law unclear about when a strip search of an arrestee is unconstitutional.

Weber Defendants raised this Florence argument in their summary judgment motion. But they did not object when the magistrate judge recommended rejecting it. "This circuit has adopted a firm waiver rule when a party fails to object to the findings and recommendations of the magistrate judge." Casanova v. Ulibarri, 595 F.3d 1120, 1123 (10th Cir. 2010) (quotations omitted). Under this rule, "the

-6-

failure to make timely objection waives appellate review of both factual and legal questions." Id. (quotations omitted). Weber Defendants have not shown, or even argued, that any exception to the firm waiver rule applies. See Duffield v. Jackson, 545 F.3d 1234, 1238 (10th Cir. 2008) (analyzing the "interests of justice" exception). Accordingly, Weber Defendants waived review of their Florence argument.[1]

**B**

Weber Defendants next challenge the denial of qualified immunity as to Webb's prolonged detention claim. Under the Fourth Amendment, a person arrested without a warrant is entitled to a prompt judicial determination of probable cause to justify any significant pretrial detention. Gerstein v. Pugh, 420 U.S. 103, 114, 124-25 (1975). In general, a probable cause determination is sufficiently prompt if it occurs within 48 hours of an arrest. Cty. of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991). If the arrestee does not receive a probable cause determination within 48 hours, the government bears the burden "to demonstrate the existence of a bona fide emergency or other extraordinary circumstance." Id. at 57. Webb was detained for five days without a judicial probable cause determination.

---

[1] Even if they had not waived the argument by failing to raise it below, Weber Defendants' argument that Florence rendered the law unclear appears to concede that the law was clear before Florence. And they do not argue why any confusion created in 2012 would apply retroactively. This inadequately developed argument would likewise be waived. Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived.").

**1**

West, Johnson, and Flatt contend they are entitled to qualified immunity based on Wilson v. Montano, 715 F.3d 847 (10th Cir. 2013), which assessed whether a complaint sufficiently pled a prolonged detention claim against two police officers.[2] In Wilson, we held that the complaint failed to state a claim against an officer who assisted in making an arrest, in part because the plaintiff did not cite any state law indicating that the officer had a duty to ensure a prompt probable cause hearing. Id. at 854-55. Weber Defendants observe that Webb similarly does not identify any Utah law assigning responsibility to correctional facility officers to take an arrestee before a magistrate. Moreover, they argue that no such law exists, and thus they do not have an affirmative duty to proactively ensure Webb received a prompt probable cause determination.

Assuming without deciding that Weber Defendants are correct, the officers nevertheless have a duty not to cause constitutional violations. Buck v. City of Albuquerque, 549 F.3d 1269, 1279 (10th Cir. 2008) ("Any official who causes a citizen to be deprived of her constitutional rights can . . . be held liable." (quotation omitted)). The district court found a genuine issue of material fact as to whether West, Johnson, or Flatt caused or helped cause the delay in Webb's probable cause hearing. On appeal, Weber Defendants do not address that finding, instead limiting

---

[2] Weber Defendants also assert, but do not develop, an argument that the law was not clearly established. This argument is waived. Adler, 144 F.3d at 679.

-8-

their argument to establishing that the correctional officers did not have a responsibility to ensure a prompt probable cause determination. Because it is clearly established that an arrestee is entitled to a prompt probable cause determination, McLaughlin, 500 U.S. at 56, and because Weber Defendants cannot challenge that a question of fact exists as to whether they caused the delay, West, Johnson, and Flatt are not entitled to summary judgment on the basis of qualified immunity.[3] See Cherrington v. Skeeter, 344 F.3d 631, 645 (6th Cir. 2003).

**2**

Thompson contends that the district court erred in denying him qualified immunity against Webb's prolonged detention claim because the record does not contain sufficient facts to demonstrate supervisory liability. A supervisor can be liable under § 1983 if he (1) "promulgated, created, implemented or possessed personal responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional violation." Wilson, 715 F.3d at 856. Thompson argues that: (1) Webb failed to identify a Weber County policy or an official responsible for operating it; (2) Webb cannot show that a Weber County policy caused the constitutional violation; and (3) Thompson did not have the requisite state

---

[3] The dissent argues that the officers are not personally responsible for ensuring a prompt probable cause hearing. But whether the officers have an affirmative duty is not at issue. Instead, the question is whether the officers caused the delay. We assume the officers may not be held liable if they merely did nothing while others violated Webb's right. Nevertheless, the officers may be held liable if their personal actions impeded Webb's probable cause determination.

of mind to be liable for the constitutional violation.[4]

As to Thompson's first two contentions, we lack jurisdiction to review whether the pretrial record sets forth a genuine issue of material fact regarding the existence of a policy, the terms of that policy, and whether the policy caused the violation. Estate of Booker, 745 F.3d at 409. We may only consider causation based upon the version of facts most favorable to the plaintiff. McBeth v. Himes, 598 F.3d 708, 717 (10th Cir. 2010). Thompson is correct that his policy, which was designed (but failed) to ensure a prompt probable cause determination, is different from the policies in Wilson, which were allegedly indifferent to detaining arrestees without prompt determinations, 715 F.3d at 851. But he does not explain why that difference matters in determining whether his policy caused Webb's constitutional injury. By his own admission, Thompson's policy had no mechanism to ensure an arrestee would be released if a judge failed to act on an affidavit within 48 hours. As a result, Webb was detained for five days before he was brought before a judge. Thompson does not develop an argument that, as a matter of law, his policy did not cause the constitutional violation.

Thompson's final argument is that the district court applied the wrong mens rea standard for supervisor liability. We addressed supervisor liability under § 1983 in Dodds v. Richardson, 614 F.3d 1185 (10th Cir. 2010), noting that "the factors

---

[4] Much of Thompson's argument addresses the standards for municipal liability. But municipalities cannot claim qualified immunity. See Lynch v. Barrett, 703 F.3d 1153, 1163 (10th Cir. 2013). And Webb's claim is brought against Thompson in his individual, rather than his official, capacity.

necessary to establish a [supervisor's] § 1983 violation depend upon the constitutional provision at issue, including the state of mind required to establish a violation of that provision." Id. at 1204. In other words, "there's no special rule of liability for supervisors. The test for them is the same as the test for everyone else." Porro v. Barnes, 624 F.3d 1322, 1328 (10th Cir. 2010). In Dodds, the constitutional right at issue was substantive due process, which we assumed requires a showing of deliberate indifference. 614 F.3d at 1205. In contrast, Webb's right to a prompt judicial determination of probable cause is protected by the Fourth Amendment. Gerstein, 420 U.S. at 112. Fourth Amendment claims are subject to an objective reasonableness standard, and we do not consider an actor's state of mind. Brigham City v. Stuart, 547 U.S. 398, 404 (2006); Cty. of Riverside, 500 U.S. at 56-57.

Thompson nevertheless argues that the applicable mens rea standard is intent. He contends that supervisor liability under § 1983 requires "a deliberate and intentional act on the part of the supervisor to violate the plaintiff's legal rights." Wilson, 715 F.3d at 858. However, this language in Wilson merely reinforces that § 1983 does not authorize respondeat superior liability, and therefore to be liable "a supervisor, as with everyone else" must have "subjected, or caused to be subjected a plaintiff to a deprivation of his legal rights." Porro, 624 F.3d at 1327-28 (quotation and alteration omitted). After observing that the plaintiff in Wilson alleged that the defendant's act caused constitutional violations, we noted appellants did not challenge the district court's conclusion that deliberate indifference was "a sufficiently culpable mental state to impose supervisory liability [for prolonged

-11-

detention claims] under § 1983." 715 F.3d at 858. We did not engage the question of which mens rea standard applies in <u>Wilson</u>, and thus did not contradict the conclusions that we apply an objective reasonableness test to Fourth Amendment claims under § 1983, <u>Stuart</u>, 547 U.S. at 404, and that the same standard applies to § 1983 claims against supervisors, see <u>Porro</u>, 624 F.3d at 1327-28.

Nevertheless, the district court did apply the wrong standard. Rather than asking whether Thompson's actions were objectively reasonable, the court asked whether Thompson acted "knowingly or with deliberate indifference that a constitutional violation would occur." Despite this error, because the court found that there was a genuine issue of material fact whether he acted with deliberate indifference, there is also a genuine issue of material fact whether he acted with objective reasonableness. Thus, Thompson is not entitled to qualified immunity on this claim.

### III

**AFFIRMED**. We **DENY** Webb's pending motions.

Entered for the Court

Carlos F. Lucero
Circuit Judge

No. 15-4053, *Webb v. Thompson*

**GORSUCH**, Circuit Judge, concurring in part and dissenting in part.

I join my colleagues in all respects but one. Because Correctional Officers West, Johnson, and Flatt allegedly contributed to the delay in Mr. Webb's arraignment, my colleagues reason, these individuals are not entitled to qualified immunity. Respectfully, however, I don't believe this conclusion follows from that premise. Of course, the Fourth Amendment generally requires a prompt arraignment for any arrested person. *See Gerstein v. Pugh*, 420 U.S. 103, 114 (1975). And it's also beyond dispute that Mr. Webb alleges he was denied a timely arraignment. But under the doctrine of qualified immunity, Mr. Webb may win damages from Messrs. West, Johnson, and Flatt only if he can show that the "contours of the right" to a timely arraignment were "sufficiently clear that . . . reasonable official[s]" in their position would have known that *their actions* violated his rights. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see also Saucier v. Katz*, 533 U.S. 194, 202 (2001) (noting the key to liability is whether a reasonable officer "would understand that what he is doing violates" federal law). And this much Mr. Webb has not done. He has not identified any decision clearly establishing as a matter of federal law that the right to a timely arraignment imposes a correlative duty on a jail's correctional officers to ensure he is brought before a magistrate in a timely fashion. And, respectfully, neither do my colleagues identify any such authority. *See* Order and Judgment at 8-9. Much to the contrary, the only relevant law anyone has cited to us comes from state law,

and it indicates that the duty to ensure a constitutionally timely arraignment in Utah falls on the *arresting* officer — not on *correctional* officers. *See* Utah Code Ann. § 77-7-23(1)(a); *McFarland v. Skaggs Cos.*, 678 P.2d 298, 301 (Utah 1984). Indeed, this court has already dismissed similar claims against a New Mexico officer who assisted in an arrest, but who was not the arresting officer responsible under state law for ensuring a timely arraignment. *See Wilson v. Montano*, 715 F.3d 847, 854-55 (10th Cir. 2013). And, respectfully, I can discern no colorable way to distinguish this case from that one.