**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

BILLY J. BLOOM; BEATRICE BLOOM,
individually and as parents and next friends
of minor children, B.B., Ha. B, and He. B,

    Plaintiffs - Appellees,

v.

CHAD POMPA,

    Defendant - Appellant,

and

STEVE TOLIVER; KELLY BIRCH;
ADAM MARSHALL; JEREMIAH
HAMMETT; SHAWN SEXTON; JOHN
DAVIS,

    Defendants.

No. 15-5098
(D.C. No. 4:12-CV-00169-JED-FHM)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **GORSUCH**, and **PHILLIPS**, Circuit Judges.
_____

    Billy Bloom was booked as a pretrial detainee into the Creek County Criminal

Justice Center (the "jail") in Oklahoma. After an altercation with another inmate, the

initiation of which is disputed, shift supervisor Chad Pompa ordered that Bloom be

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

transferred into a segregation cell which already housed inmate Shawn Sexton, who Pompa knew to be violent. When Detention Officer Jeremiah Hammett opened the cell door, Sexton immediately ran out of the cell and struck Bloom in the face, causing him to fall and strike his head against a metal pipe. Although Bloom lost consciousness, Sexton continued striking him. Bloom suffered severe brain trauma, respiratory arrest, and a contusion of his chest wall. He filed suit under 42 U.S.C. § 1983, alleging violations of the Fourth, Eighth, and Fourteenth Amendments. Specifically, he contends Pompa transferred him to Sexton's cell as punishment, and acted with deliberate indifference toward the risk posed by Sexton. The district court denied Pompa qualified immunity. We agree that it was clearly established that a prison official may not punish a pretrial detainee by intentionally subjecting him to violence at the hands of another inmate. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I

In an interlocutory appeal from denial of qualified immunity, we lack "jurisdiction to review whether or not the pretrial record sets forth a genuine issue of fact for trial." Estate of Booker v. Gomez, 745 F.3d 405, 409 (10th Cir. 2014) (quotation omitted). Thus, we must accept the facts the district court determined a reasonable jury could find, id. at 409-10, viewing the evidence in the light most favorable to the plaintiff and resolving all factual disputes and reasonable inferences in his favor, id. at 411. The district court held that a reasonable jury could find the following.

2

Bloom was booked into jail in Sapulpa, Oklahoma on November 23, 2011 as a pretrial detainee. He was initially held in the jail's N-pod. On December 10, 2011, Bloom was involved in an altercation with another inmate, after which he was moved into a holding unit. Pompa, a shift supervisor at the jail, ordered Hammett to move Bloom from the holding cell to segregation cell C-212, which was already occupied by Sexton. Sexton was known by jail personnel to be violent, and had been involved in a number of fights at the jail. Pompa in particular knew of Sexton's violent temperament. Months earlier, Pompa had called for another officer's assistance in moving Sexton to segregation after Sexton refused Pompa's commands for him to stop kicking and beating the door of his pod. Against this backdrop, Pompa intended "to discipline [Bloom]" by placing him with Sexton, and felt that placement in other available cells "wouldn't have been disciplinary."

Pompa's shift ended and he left the jail shortly before the ordered move occurred. Prior to the move, Sexton told Hammett that he "better not" put another inmate in Sexton's cell, or he would "run him out"—prison parlance for "hurt him." As Hammett and Bloom approached C-212, Sexton was standing near the cell door. Sexton told Hammett, "I do not want him in my cell. If you put him in here I will kill that fucking son-of-a-bitch." When Hammett opened the door, Sexton immediately exited the cell and attacked Bloom. Sexton hit Bloom in the face with his fist, causing Bloom to fall, strike his head against a metal railing, and lose consciousness. Sexton continued to hit Bloom after he was on the floor. Hammett called for assistance, and Adam Marshall, the shift supervisor on duty at the time,

3

and the jail nurse responded.  By the time they arrived, Bloom had stopped breathing.  The nurse removed blood from Bloom's mouth and used an ambu bag to help him breathe.  His heart rate slowed and he made gurgling sounds, indicating blood was entering his lungs.  An ambulance arrived shortly, and Bloom, who was unresponsive, was taken to the hospital.  Bloom suffered a closed head injury with acute traumatic brain injury, respiratory arrest, and a contusion of his chest wall.

Bloom filed this suit alleging that Pompa transferred him to Sexton's cell as a punishment in violation of his Fourteenth Amendment due process rights.  Bloom further claims that Pompa knew Sexton was violent and thus acted with deliberate indifference by moving him into a cell with Sexton and by failing to protect him from the assault.  Pompa and the other defendants moved for summary judgment, asserting qualified immunity.  The district court denied the motion as to Bloom's § 1983 claims against Hammett and Pompa, but granted it as to all other defendants.  Only Pompa appeals.

## II

"Ordinarily, orders denying summary judgment are not appealable final orders."  Estate of Booker, 745 F.3d at 409 (quotation and alteration omitted).  However, we have limited jurisdiction to review "[t]he denial of qualified immunity to a public official . . . under the collateral order doctrine to the extent it involves abstract issues of law."  Id. (quotation omitted).  Under our limited jurisdiction, we may review:  "(1) whether the facts that the district court ruled a reasonable jury could find would suffice to show a legal violation, or (2) whether that law was clearly

4

established at the time of the alleged violation." Id. (quotation omitted). As noted supra, we lack jurisdiction "to review whether . . . the pretrial record sets forth a genuine issue of fact for trial." Id. (quotation omitted). Moreover, we "review a district court's qualified immunity determinations de novo, viewing the evidence in the light most favorable to the plaintiff as the nonmoving party." Felders ex rel. Smedley v. Malcom, 755 F.3d 870, 877 (10th Cir. 2014). To defeat an assertion of qualified immunity, the plaintiff bears the burden of showing: (1) the defendant violated the plaintiff's constitutional right; and (2) the right was clearly established at the time of the violation. Id.

**A**

Under the Fourteenth Amendment, the "[s]tate does not acquire the power to punish . . . until after it has secured a formal adjudication of guilt." Ingram v. Wright, 430 U.S. 651, 671 n.40 (1977). Thus, a pretrial detainee is held to ensure his presence at trial, and the government "may subject him to the restrictions and conditions of the detention facility [only] so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." Bell v. Wolfish, 441 U.S. 520, 536-37 (1979). The Bell Court specified: "the Fourteenth Amendment's guarantee of due process prohibits any punishment of those awaiting trial." Blackmon v. Sutton, 734 F.3d 1237, 1241 (10th Cir. 2013). Of course, we distinguish between "punitive measures that may not constitutionally be imposed prior to a determination of guilt and regulatory restraints that may." Bell, 441 U.S. at 537. To determine if a pretrial detainee has been subject to punishment, "we must

5

ask whether an expressed intent to punish on the part of the detention facility officials exists. If so, liability may attach. If not, a plaintiff may still prove unconstitutional punishment by showing that the restriction in question bears no reasonable relationship to any legitimate governmental objective." Blackmon, 734 F.3d at 1242.

Pompa suggests that the district court impermissibly held that moving a pretrial detainee into segregation is unconstitutional punishment. But Pompa reads the district court order too broadly. The district court merely concluded that a jury could find Pompa intended to punish Bloom by deliberately placing him with a violent inmate.[1]

Taking as true the facts the district court determined a reasonable jury could find, Estate of Booker, 745 F.3d at 409-410, Pompa intended to punish Bloom by subjecting him to another inmate's violence. This fact alone is sufficient to demonstrate punishment of a pretrial detainee in violation of Bloom's Fourteenth

[1] Pompa argues that he intended to "discipline" Bloom, not to "punish" him. There is evidence in the record suggesting that Pompa may have intended to "discipline" Bloom only by restricting his movement and access to television. But "the factual record . . . points in more than one direction," Blackmon, 734 F.3d at 1242, and, for the reasons stated, we do not have jurisdiction to review the district court's conclusion that a reasonable jury could find that Pompa intended to punish Bloom by exposing him to Sexton's violence, Estate of Booker, 745 F.3d at 409. Thus, we do not consider whether an intention to limit a pretrial detainee's movement or access to television amounts to a punishment. At trial, Pompa may present evidence to dispute Bloom's version of the facts and demonstrate that he did not intend to punish Bloom, or that he moved Bloom to Sexton's cell for a legitimate penological purpose. Blackmon, 734 F.3d at 1243 (although defendant "can't contest [plaintiff's] version of the facts on summary judgment, [he is] of course free to do so at trial").

6

Amendment rights.  Blackmon, 734 F.3d at 1241 (liability may attach given expressed intent to punish).  We thus do not consider whether non-punitive objectives simultaneously motivated the move to Sexton's cell.[2]  Moreover, it was clearly established in December 2011 that any punishment of a pretrial detainee was unconstitutional.  See Bell, 441 U.S. 535; Blackmon, 734 F.3d at 1241.  It was likewise clearly established that "a showing of an expressed intent to punish on the part of detention facility officials" is sufficient to demonstrate "the disability is imposed for the purpose of punishment."  Bell, 441 U.S. at 538.

**B**

A pretrial detainee enjoys at least the same protections as a convicted criminal.  Blackmon, 734 F.3d at 1240-41.  Under the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, including to "take reasonable measures to guarantee the safety of the inmates."  Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quotation omitted).  This duty includes a responsibility to protect prisoners from violence inflicted by other inmates.  Id. at 833-34.  "Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society."  Id. at 834 (quotation omitted); Howard v. Waide, 534 F.3d 1227, 1236 (10th Cir. 2008).

---

[2] According to Pompa, the district court erred in failing to reach the question of whether the move bore a reasonable relationship to a legitimate government purpose.  But because the district court concluded the evidence could demonstrate that Pompa intended to punish Bloom, it properly did not determine whether a legitimate governmental purpose also motivated the move.  See id. at 1241-42.

7

A "prison official may be held liable . . . if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847. This standard contains an objective and subjective component. Craig v. Eberly, 164 F.3d 490, 495 (10th Cir. 1998). To satisfy the objective component, an inmate must allege facts to demonstrate that the deprivation was "sufficiently serious." Id. And "[t]he subjective component requires the jail official to have a sufficiently culpable state of mind," which in this context is one of "deliberate indifference to inmate health and safety." Id. (quotations omitted). "In other words . . . [,] the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. (quotation omitted). Subjective knowledge may be demonstrated "in the usual ways, including inference from circumstantial evidence . . . [or] from the very fact that the risk was obvious." Farmer, 511 U.S. at 842.

Pompa does not argue that any deprivation was not sufficiently serious. Instead, he argues that Bloom failed to demonstrate that he acted with deliberate indifference to the risk posed by Sexton. In particular, Pompa argues that no reasonable jury could infer that Pompa knew of Sexton's violent temperament or his tendency toward "assaultive behavior." However, the district court held to the contrary, and we do not have jurisdiction to review this factual determination. Estate of Booker, 745 F.3d at 409.[3] Taking that factual determination as true, Pompa

---

[3] Pompa argues that the district court impermissibly attributed other jail staff's knowledge to Pompa. But the district court merely concluded that staff's knowledge

8

knowingly disregarded a serious threat to Bloom's safety and thus acted with deliberate indifference.  See Farmer, 511 U.S. at 847; Craig, 164 F.3d at 495. Moreover, Pompa does not advance any argument that it was not clearly established that he had a duty to protect Bloom from a substantial risk of serious harm.[4]

Pompa fails to argue any abstract issue of law as to this claim.  Estate of Booker, 745 F.3d at 409.  We leave "the trier of fact, then, to decide whether these inferences are sufficiently strong to cast constitutional responsibility on [Pompa's] conduct."  Gonzalez v. Martinez, 403 F.3d 1179, 1187 (10th Cir. 2005).

### III

We **AFFIRM** the district court's denial of qualified immunity as to Bloom's claims against Pompa.

Entered for the Court

Carlos F. Lucero
Circuit Judge

---

was sufficient circumstantial evidence for a jury to conclude that Pompa was aware of the risk posed by Sexton.  See Farmer, 511 U.S. at 842 (a jury may rely on circumstantial evidence to infer deliberate indifference).

[4] Pompa does argue that it is not clearly established "that an inmate's kicking and beating on a door ten months before an assault of another inmate is sufficient to inform a detention officer that he will be branded deliberately indifferent to a known risk of inmate assaults."  Although Pompa couches this argument in language suggesting a legal issue, at base he simply repeats his assertion that there is not sufficient evidence to conclude that he knew of the risk posed by Sexton.