**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 13, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

TERRELL S. HUBBARD,

    Plaintiff - Appellee,

v.

TOM NESTOR, individually and in his
official capacity; MICHAEL YOWELL,
individually; WADE ADAMS,
individually; DERIK MATTSON,
individually; COLE BRITTON,
individually,

    Defendants - Appellants.

No. 19-1399
(D.C. No. 1:16-CV-00444-CMA-STV)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **BALDOCK**, and **PHILLIPS**, Circuit Judges.
_____

Plaintiff – Appellee Terrell Hubbard brought this 42 U.S.C. § 1983 action

against various members of the Lincoln County Jail's staff, including Defendants –

Appellants Captain Michael Yowell, Corporal Cole Britton, Deputy Wade Adams, and

Deputy Derik Mattson (collectively, Defendants).[1] As relevant here, he alleges

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Plaintiff's complaint also includes claims against Sherriff Tom Nestor in his
individual and official capacities. The district court granted Sheriff Nestor qualified
immunity on the individual capacity claim against him but denied summary judgment

Defendants violated the Fourteenth Amendment rights guaranteed to him as a pretrial detainee by placing him in disciplinary segregation as punishment for disciplinary infractions without ever giving him notice or a hearing. Defendants sought summary judgment on Plaintiff's procedural due process claims, arguing they didn't violate the Constitution and, even if they did, they were nonetheless entitled to qualified immunity. The district court determined that a reasonable jury could find Defendants imposed disciplinary measures against Plaintiff with the intent to punish him and that such conduct would have violated his clearly established rights. Thus, the court concluded that Defendants were not entitled to qualified immunity and denied their motion for summary judgment.

Defendants now ask us to reverse the district court's decision. In doing so, however, they challenge the district court's conclusion that sufficient evidence existed from which a jury could find they each intended to punish Plaintiff, in violation of his constitutional right to due process. We lack jurisdiction on interlocutory review to consider this argument because the record doesn't blatantly contradict the district court's factual determinations. Defendants also argue the district court erred in denying them qualified immunity because Plaintiff was not a typical detainee as he was also a sentenced inmate on parole to the Lincoln County Jail at the time of the alleged violations. This challenge might have had legs, but Defendants waived it by failing to object to the magistrate judge's treatment of their contentions regarding

on the official-capacity claim. Neither of these rulings are at issue, as we are merely addressing Defendants' interlocutory appeal from the denial of qualified immunity.

2

Plaintiff's parolee status in the district court. And finally, because our existing caselaw on the punishment of typical pretrial detainees clearly established the contours of Plaintiff's asserted right under the facts as we must construe them at this stage, Defendants are not entitled to qualified immunity. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.

In 2013, Plaintiff pleaded guilty to first degree criminal trespass and was sentenced to two years imprisonment, to be followed by two years of parole.[2] While incarcerated at the Limon Correctional Facility, he was charged with introduction of dangerous contraband for allegedly possessing a sharpened toothbrush with the bristles removed. On April 23, 2015, Plaintiff completed his two-year term of incarceration and was paroled to Lincoln County Jail to await adjudication on the contraband charge.

To put it simply, Plaintiff wasn't a model detainee at the Lincoln County Jail. He engaged in verbal disputes with other inmates, got in a fight with a fellow inmate, and allegedly violated quite a few jail rules. In response to Plaintiff's conduct, Defendants placed him on lockdown in his cell in D-pod, moved him to a T-cell, and transferred him to G-pod when no other inmates were being housed there.[3] At no point

---

[2] As explained in detail below, our jurisdiction is limited to abstract questions of law. *Sawyers v. Norton*, 962 F.3d 1270, 1281 (10th Cir. 2020). Accordingly, we recount "the facts found by the district court and those that it likely assumed." *Fogarty v. Gallegos*, 523 F.3d 1147, 1158 (10th Cir. 2008).

[3] D-pod is a general housing pod for male inmates with cells separated from the pod's common area, where the television and telephone are located. G-pod, which is also used for general housing for male inmates, is a dorm-style pod without

during his time at the Lincoln County Jail was Plaintiff afforded a hearing in connection with any of his placements on lockdown or in disciplinary segregation.

Four specific incidents are relevant to Plaintiff's procedural due process claims. On May 30, 2015, Defendant Deputy Mattson and another deputy conducted a search of a female inmate's cell and found a note signed "HOLLA RELLI DA GOD," an inscription which allegedly had been found on multiple papers in Plaintiff's cell. The deputies also believed the handwriting on the letter matched Plaintiff's handwriting, as far as the naked eye could tell. When Plaintiff refused to talk to the deputies about the letter, they placed him in a T-cell. According to an incident report, Plaintiff violated a minor rule by passing a note to the female inmate, and his lockdown in a T-cell was proper under the Lincoln County Jail Inmate Handbook and jail policy.

On July 6, 2015, an inmate handed Defendant Deputy Adams a shampoo bottle filled with an unknown red liquid, which the inmate said was cleaning solution. The inmate told Deputy Adams that Plaintiff had given him the bottle of cleaning solution so the inmate could clean his cell while he was on lockdown. Deputy Adams determined Plaintiff, who was already on lockdown at the time, violated a minor jail rule by passing an unauthorized item to an inmate in lockdown. On this basis, Deputy Adams extended Plaintiff's lockdown for an additional twenty-three hours.

---

individualized cells. T-cells are located in the Lincoln County Jail's booking area; they are used for intake and disciplinary purposes. At the jail, there are "wet T-cells," which contain a sink and toilet, and "dry T-cells," which contain only a grated hole in the floor that jail staff must flush by using a button located outside of the cell.

A few weeks later, Plaintiff was involved in a physical altercation with another inmate. During the quarrel, Plaintiff threw two closed-fist punches at his fellow inmate's head and face after the inmate had turned away from the argument. Following the fight, Plaintiff was sent to a dry T-cell for a couple of days and then placed in G-pod by himself for at least four months. Captain Yowell's incident report indicated he placed Plaintiff on a "segregation lockdown" until the week of August 3, 2015, due to continued issues he had caused. The report further noted that Plaintiff had been "segregationally locked-down" on multiple occasions "due to major and serious violations of the Lincoln County Jail Inmate Handbook."

In November 2015, Plaintiff was removed from lockdown and placed on "trustee" status so he could join a work crew redoing the jail's floors.[4] Alas, Plaintiff's trustee status was short-lived. On December 14, 2015, Defendant Corporal Britton removed Plaintiff from the work crew based on information that Plaintiff was constantly watching television and not assisting with the floor maintenance. Corporal Britton had Plaintiff removed from E-pod, where the floor crew was working, and placed in G-pod. Plaintiff remained in G-pod by himself for about four or five days after Corporal Britton removed him from the floor crew.

Plaintiff filed this § 1983 action against Defendants in federal district court. As relevant here, he alleges that Defendants violated his Fourteenth Amendment right to due process by failing to provide adequate procedural safeguards—particularly, notice

---

[4] According to Captain Yowell, a "trustee" is an inmate who has been given more responsibility, more privileges, and more access to different areas of the jail.

and a hearing—in connection with his disciplinary sanctions. Defendants moved for summary judgment, arguing that they did not violate Plaintiff's constitutional rights because their actions were taken to preserve the order, safety, and security of the jail and that, regardless, they were entitled to qualified immunity.

The district court, adopting the magistrate judge's recommendation over Defendants' objections, denied the motion for summary judgment on Plaintiff's procedural due process claims. In denying qualified immunity, the district court determined that, when viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could find each Defendant relocated Plaintiff to a cell or pod by himself with the intent to punish him. And because an act by a corrections officer, such as placing a detainee in segregation, done with an intent to punish constitutes unconstitutional pretrial punishment, the district court concluded that a reasonable jury could find Defendants violated Plaintiff's due process rights.

Turning to qualified immunity's second prong, the district court held it was clearly established that imposing disciplinary sanctions with the intent to punish a pretrial detainee violates the detainee's due process rights under the Fourteenth Amendment. As a result, the district court found Defendants were not entitled to qualified immunity and denied their motion for summary judgment on Plaintiff's due process claims. Defendants timely appealed.

II.

On appeal, Defendants argue they were erroneously denied summary judgment because (1) the record blatantly contradicts the district court's factual determinations,

6

(2) Plaintiff failed to show Defendants' actions violated a constitutional right, and (3) Plaintiff failed to demonstrate his asserted right was clearly established. After explaining the limitations on our review, we clarify which issues we lack jurisdiction to consider and then proceed to the arguments we have jurisdiction to address.

A.

"We review the denial of a summary judgment motion raising qualified immunity questions de novo." *Reavis v. Frost*, 967 F.3d 978, 984 (10th Cir. 2020) (quoting *Estate of Ceballos v. Husk*, 919 F.3d 1204, 1212 (10th Cir. 2019)). Given the procedural posture of this case, however, this court's jurisdiction is limited to abstract issues of law. *Sawyers*, 962 F.3d at 1281. Thus, we may review "(1) whether the facts that the district court ruled a reasonable jury could find would suffice to show a legal violation, or (2) whether that law was clearly established at the time of the alleged violation." *Ralston v. Cannon*, 884 F.3d 1060, 1066 (10th Cir. 2018) (quoting *Roosevelt-Hennix v. Prickett*, 717 F.3d 751, 753 (10th Cir. 2013)). But we lack jurisdiction at this stage "to review a district court's factual conclusions, such as the existence of a genuine issue of material fact for a jury to decide, or that a plaintiff's evidence is sufficient to support a particular factual inference." *Sawyers*, 962 F.3d at 1281 (quoting *Fancher v. Barrientos*, 723 F.3d 1191, 1199 (10th Cir. 2013)).

To be clear, "a mere determination on the part of a district court that genuine issues of material fact preclude summary judgment does not necessarily bar this court's exercise of appellate jurisdiction in a particular case." *Ralston*, 884 F.3d at 1067. This court still has jurisdiction in such a case to address challenges to the denial of qualified

7

immunity, but only "if our review would [not] require second-guessing the district court's determinations of evidence sufficiency." *Id.* (alteration in original) (quoting *Henderson v. Glanz*, 813 F.3d 938, 948 (10th Cir. 2015)). We are left, then, with jurisdiction over appeals to the extent a defendant–appellant "does not dispute the facts a district court determines a reasonable juror could find" but instead raises legal challenges to the denial of qualified immunity based on those facts. *See id.*

Given all this, if "a district court concludes that a reasonable jury could find certain specified facts in favor of the plaintiff," we "usually must take them as true— and do so even if our own *de novo* review of the record might suggest otherwise as a matter of law." *Sawyers*, 962 F.3d at 1281 (quoting *Estate of Booker v. Gomez*, 745 F.3d 405, 409–10 (10th Cir. 2014)). But like most general rules, this one has a few exceptions. On appeal from a denial of qualified immunity at summary judgment, we have jurisdiction to review the district court's factual conclusions de novo when (1) the court failed to specify the facts upon which it based the denial of qualified immunity or (2) the record blatantly contradicts the facts the court determined a reasonable jury could credit. *Lewis v. Tripp*, 604 F.3d 1221, 1225–26 (10th Cir. 2010).

B.

In this case, the district court determined that a reasonable jury could find each Defendant intended to punish Plaintiff when they placed him on lockdown or in disciplinary segregation at the Lincoln County Jail. And based on these key factual findings, among others, the district court concluded that Plaintiff satisfied his burden of showing Defendants violated his Fourteenth Amendment right to due process. *See*

8

*Blackmon v. Sutton*, 734 F.3d 1237, 1241 (10th Cir. 2013) (explaining that liability may attach when an expressed intent to punish exists); *Bloom v. Pompa*, 654 F. App'x 930, 934 n.2 (10th Cir. 2016) (unpublished) ("[B]ecause the district court concluded the evidence could demonstrate that Pompa intended to punish Bloom, it properly did not determine whether a legitimate governmental purpose also motivated the move."). Defendants dispute this conclusion, arguing the court misconstrued the evidence.

Defendants' opening brief repeatedly takes issue with the district court's determinations regarding their state of mind. So does their reply brief. Specifically, Defendants doggedly insist the district court erred in finding a constitutional violation because the summary judgment record does not establish they intended to punish Plaintiff. *See, e.g.*, Appellants' Opening Br. at 31 ("The District Court erred in finding that Appellee's Constitutional rights may have been violated because . . . he presented no evidence that there existed an expressed intent to punish him[.]" (italics removed)); *id.* at 36 ("Appellee produced no evidence tending to show that there existed an '*expressed intent* to punish on the part of [the] detention facility[.]'" (first alteration in original) (quoting *Blackmon*, 734 F.3d at 1241)); Appellants' Reply Br. at 19 ("Appellee failed to present *any* evidence that there existed an 'expressed intent to punish on the part of the detention facility.'" (quoting *Blackmon*, 734 F.3d at 1242)); *id.* at 20 ("Appellee produced no evidence that there existed an expressed intent to punish on the part of the detention facility[.]"); *id.* ("The record does *not* establish an expressed intent to punish on behalf of the detention facility – just the opposite.").

9

The problem with Defendants' argument is that it presents no abstract issue of law. Instead, Defendants ask this court to determine "a question of evidence sufficiency, i.e., which facts [Plaintiff] may, or may not, be able to prove at trial." *Allstate Sweeping, LLC v. Black*, 706 F.3d 1261, 1267 (10th Cir. 2013). This is precisely the type of evidentiary analysis we lack jurisdiction to address, as it would "require second-guessing the district court's determinations of evidence sufficiency." *Ralston*, 884 F.3d at 1067 (quoting *Henderson*, 813 F.3d at 948); *see also id.* at 1068 n.9 (noting that "pretrial questions about the existence or nonexistence of intent are particularly inappropriate for interlocutory appeal"); *Bloom*, 654 F. App'x at 934 n.1 ("[W]e do not have jurisdiction to review the district court's conclusion that a reasonable jury could find that Pompa intended to punish Bloom[.]").

That conclusion does not end our inquiry, however, because Defendants invoke the blatant-contradiction exception in an attempt to evade the limitations on our review. The record blatantly contradicts a district court's factual determination if all the evidence points to a contrary conclusion. *See Henderson*, 813 F.3d at 950–51 (finding the record blatantly contradicted the factual conclusion that a defendant knew of an assault risk because all evidence showed he believed a locked door and watchful staff separated the inmate plaintiff and the assailant); *Scott v. Harris*, 550 U.S. 372, 380 (2007) (applying the blatant-contradiction exception because the version of events the lower court relied on was "so utterly discredited by the record that no reasonable jury could have believed [it]"). In other words, to trigger the blatant-contradiction

10

exception, "the court's findings must constitute 'visible fiction.'" *Lynch v. Barrett*, 703 F.3d 1153, 1160 n.2 (10th Cir. 2013) (quoting *Scott*, 550 U.S. at 380–81).

Defendants proffer three specific examples in support of their blatant-contradiction challenge. The first two concern Plaintiff's aggressor status during his physical altercation with another inmate and the district court's finding that Plaintiff was "accused by Jail staff of having contraband in his cell and of other violations of Jail rules." These arguments are wholly without merit. Even a cursory review of the evidence reveals that the district court's factual recitation of these events is not blatantly contradicted by the record. We need not belabor the matter any further.

As for the third example, Defendants contend the record blatantly contradicts the district court's determination that Captain Yowell placed Plaintiff on disciplinary status with the intent to punish him for fighting with another inmate. Relying on Plaintiff's deposition testimony, Defendants argue that Plaintiff admitted he was not disciplined as a result of the fight. It is true that when Plaintiff was asked at one point during his deposition whether he was disciplined for the fight, he responded: "Not that I know of." But elsewhere in his testimony, as the district court noted, Plaintiff clarified that he understood his placement in G-pod following the fight to be "punitive," "[a]s punishment," and "[f]or disciplinary issues."

If Plaintiff's conflicting testimony wasn't enough to sink Defendants' blatant-contradiction argument, Captain Yowell's testimony surely does. Captain Yowell testified that Plaintiff was "sanctioned" for major and minor rules violations, including possessing contraband. He further testified that "T-cells are . . . a reactive sanction";

11

"if [an inmate is] is placed in a T-cell, it's a disciplinary setting, reactive to behavior"; and "[d]isciplinary status is a reactive measure taken by jail staff and jail supervisors that was reactive to violation of the rules, or potential criminal prosecution." Given this evidence, we cannot conclude the record blatantly contradicts the district court's factual determination that Captain Yowell intended to punish Plaintiff.

At bottom, Defendants fail to present the type of clear, conclusive evidence necessary to show the district court's factual findings constitute visible fiction. *See Scott*, 550 U.S. at 378 (concluding that a videotape capturing the events in question "quite clearly contradict[ed] the version of the story told by [the plaintiff] and adopted by the Court of Appeals"). We thus lack jurisdiction to consider Defendants' challenge to the district court's factual conclusions regarding their intent to punish Plaintiff.

C.

Having concluded we lack jurisdiction to consider Defendants' challenge to the district court's determinations of evidence sufficiency, we turn to the arguments we do have jurisdiction to review. *See Brown v. Flowers*, —F.3d—, No. 19-7011, 2020 WL 5509683, at *3–4 (10th Cir. Sept. 14, 2020) (declining to review the defendant's arguments regarding evidence sufficiency, but exercising jurisdiction to review the abstract legal questions of whether the defendant was entitled to qualified immunity).

1.

Defendants contend Plaintiff failed to show a constitutional violation because, in addition to being held as a pretrial detainee at the Lincoln County Jail, he was a sentenced inmate on parole and thus a constructive prisoner at the relevant time. Even

12

if the measures they imposed were punitive, Defendants reason, their actions did not violate the Constitution because the "atypical and significant hardship" standard for incarcerated inmates under *Sandin v. Connor*, 515 U.S. 472, 484 (1995), governs Plaintiff's due process claims. In a similar vein, Defendants argue the law was not clearly established because of Plaintiff's dual status as a pretrial detainee and parolee.

We have jurisdiction to consider these arguments, which present abstract legal questions not predicated on the facts advocated by Defendants. *See Brown*, 2020 WL 5509683, at *3–4. But before we do, we must address Plaintiff's assertion that Defendants waived appellate review of their parolee arguments by failing to sufficiently object to the magistrate judge's recommendation.

"Under this court's firm waiver rule, the failure to timely object to a magistrate judge's finding and recommendations 'waives appellate review of both factual and legal questions.'" *Klein v. Harper*, 777 F.3d 1144, 1147 (10th Cir. 2015) (quoting *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010)). To preserve an issue, "a party's objections to the magistrate judge's report and recommendation must be *both* timely and *specific*." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996) (emphasis added). "[O]nly an objection that is sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute will advance the policies . . . that led us to adopt a waiver rule in the first instance." *Id.*

Here, neither Defendants' summary judgment motion nor their objections to the magistrate judge's recommendation include the parolee arguments made in their opening brief on appeal. Defendants raised several objections to the magistrate judge's

13

recommendation, but they said nary a word about the magistrate judge's understanding and treatment of their contentions regarding Plaintiff's parolee status. As a result, Defendants failed to adequately present their parolee arguments to the district court.

We have recognized two exceptions to the firm-waiver rule: "when (1) a *pro se* litigant has not been informed of the time period for objecting and the consequences of failing to object, or when (2) the 'interests of justice' require review." *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Morales–Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005)). Neither exception applies here.

The first exception doesn't apply because Defendants were represented by counsel in the district court and, in any event, the magistrate judge advised them of the time for objecting and the consequences of failing to do so. As for the second, interests-of-justice exception, we have considered as factors the "force and plausibility of the explanation" for a party's failure to comply and "the importance of the issues raised." *Casanova*, 595 F.3d at 1123 (quoting *Morales–Fernandez*, 418 F.3d at 1120). Defendants invoke the second exception, but they do not justify how the interests of justice compel review.

For starters, Defendants have not provided an explanation for their failure to comply that carries significant "force" or "plausibility." At various points in the recommendation, the magistrate judge unequivocally explained that Defendants did not present, and so the court would not consider, the exact parolee arguments they raise for the first time on appeal. The magistrate judge's decision to do so in footnotes rather than above the line is of no consequence. With respect to the importance of the issue

14

raised, we agree with Defendants—albeit likely for different reasons—that clearly establishing the law is important for purposes of qualified immunity. But under these circumstances, we remain unpersuaded that the interests-of-justice exception militates in favor of declining to apply the firm-waiver rule. *See Duffield*, 545 F.3d at 1237–38 (declining to apply the interests-of-justice exception where the pro se litigant was aware of the filing deadline and failed to adequately account for his failure to comply).

Finally, Defendants contend the firm-waiver rule is inapplicable because their parolee arguments are predicated on qualified immunity and therefore cannot be waived. Not so. *See Sawyers*, 962 F.3d at 1286 (concluding that the defendants waived a challenge to the district court's clearly-established-law holding due to inadequate briefing). In *Webb v. Thompson*, we applied the firm-waiver rule and declined to review the defendants' argument that the district court erred in denying qualified immunity because *Florence v. Board of Chosen Freeholders of the County of Burlington*, 566 U.S. 318 (2012), "rendered the law unclear about when a strip search of an arrestee is unconstitutional." 643 F. App'x 718, 722–23 (10th Cir. 2016) (unpublished). We see no basis to reach a different conclusion here. Thus, Defendants waived appellate review of their parolee arguments.

2.

Defendants next argue that, even when ignoring Plaintiff's parolee status and accepting the facts the district court determined a reasonable jury could find, Plaintiff failed to demonstrate they violated a clearly established right. We agree with Defendants that we have jurisdiction to consider this abstract legal issue. *See Sawyers*,

15

962 F.3d at 1286. But considering the facts as we must construe them on this interlocutory appeal alongside our caselaw on the punishment of pretrial detainees, we readily conclude their argument is without merit.

A factually similar Supreme Court or Tenth Circuit decision, or the weight of persuasive authority from other courts, can clearly establish a right. *Ullery v. Bradley*, 949 F.3d 1282, 1291 (10th Cir. 2020). Although we may not "define clearly established law at a high level of generality," a "case directly on point" is not required. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741–42, (2011)). Rather, the "precedent must be *clear enough* that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (emphasis added). "[G]eneral statements of the law" also "can clearly establish a right for qualified immunity purposes if they apply 'with obvious clarity to the specific conduct in question.'" *Halley v. Huckaby*, 902 F.3d 1136, 1149 (10th Cir. 2018) (alteration in original) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

It was clearly established at the time of Defendants' conduct that the Fourteenth Amendment "prohibits *any* punishment" of a pretrial detainee without due process. *Blackmon v. Sutton*, 734 F.3d 1237, 1241 (10th Cir. 2013); *see also Bell v. Wolfish*, 441 U.S. 520, 535–37 (1979) (holding that the government may subject a pretrial detainee to restrictions and conditions of confinement without triggering procedural due process protection so long as such measures don't amount to punishment). Importantly here, it was also clearly established that "a showing of an expressed intent

16

to punish on the part of detention facility officials"—standing alone—is sufficient to demonstrate "the disability is imposed for the purpose of punishment." *See Bell*, 441 U.S. at 538; *see also Blackmon*, 734 F.3d at 1241. This clearly established standard is sufficiently specific to have put Defendants on notice that their actions—intentionally punishing Plaintiff by placing him on disciplinary status or in disciplinary segregation without giving him an opportunity to be heard—violated his due process rights.

The thrust of Defendants' counterargument is that this clearly established law is too general for them to have understood their conduct violated the Fourteenth Amendment. That is, Defendants contend they are entitled to qualified immunity because there is no Supreme Court or Tenth Circuit decision on point to inform them that their actions under these particular circumstances constituted unconstitutional punishment. But in doing so, Defendants fail to grapple with the district court's factual determinations that they intended to punish Plaintiff by placing him on disciplinary status or in disciplinary segregation. In light of these facts, which this court lacks authority to review, we have no trouble concluding a reasonable detention facility officer in Defendants' shoes would have known their actions violated Plaintiff's due process rights. We are thus unable to grant Defendants the immunity they seek.[5]

---

[5] Defendants may of course present evidence at trial to dispute Plaintiff's version of the facts, demonstrate they didn't intend to punish him, and contend their actions were always reasonably related to a legitimate penological purpose. *See Blackmon*, 734 F.3d at 1243.

17

\* \* \*

For the reasons stated above, we AFFIRM the district court's order denying Defendants summary judgment on Plaintiff's procedural due process claims.

Entered for the Court


Bobby R. Baldock
Circuit Judge